## Fareira *versus* Gabell.

1. A wagering contract is one in which the parties stipulate that they shall gain or lose upon the happening of an uncertain event in which they have no interest except that arising from the possibility of such gain or loss.

2. Whether a contract is a wagering one is a question for the jury.

3. Notes given to a broker to cover losses incurred in stock gambling operations are void.

4. Where a broker advances money to pay losses incurred in such operations he cannot recover the amount advanced, nor even the commissions for his services, as the whole transaction is unlawful.

5. It does not vary the legal aspect of the case that some of the parties with whom the broker dealt were actual buyers and sellers and did not intend to gamble.

6. Brua's Appeal, 5 P. F. Smith, 294, and Smith *v.* Bouvier, 25 Id. 325, followed.

[*Fareira v. Gabell.*]

February 7th 1879.   Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1879, No. 64.

Assumpsit by John Fareira against George T. Gabell on five promissory notes drawn by Gabell to the order of plaintiff.

At the trial defendant gave evidence to show that he employed plaintiff to operate in stocks for him; that the contracts made through the agency of plaintiff were simply wagering contracts; that the transactions covered about two years; that in 1875, defendant gave three of the notes in suit, amounting to $7000, as "margins on stock contracts," and two months thereafter the other two notes in suit, amounting to $5000, which was for an indebtedness then appearing to be due.

In rebuttal, the plaintiff gave evidence that in November 1875, upon a settlement the defendant admitted there was due plaintiff the sum of $14,794.67; that the defendant not having fulfilled his stock contracts, plaintiff had, with defendant's assent, advanced the money to cover his losses; that in some instances the stock was delivered to the purchasers, and in some it was not.

The court, Hare, P. J., in charging the jury said :

"Was this a gambling or wagering operation which the law does not sanction, and will not carry into effect ?   Now, a wager may be defined as a contract in which the parties stipulate that they shall gain or lose upon the happening of an uncertain event, in which they have no interest except that arising from the possibility of such gain or loss.

" This may be illustrated by an example :

" A. and B. agree, in consideration of a premium paid by B., that if a certain ship is lost at sea, A. shall pay B. the value of the ship.   If B. has no interest in the ship, it is a wagering contract, but if B. has an interest, and will be loser if the ship is wrecked, it is a contract of indemnity and not a wager.   So, if two men agree that if coffee rises in price, one of them shall pay a sum of money to the other, it is a wager, if they have no other interest in the coffee than that growing out of the contingency about which they stipulate.   But it does not follow that every contract which produces such a result is a wager; the question is one of intention, as deduced from the facts and circumstances.

" Let us suppose that A. agrees with B. to buy a thousand bushels of wheat, at $2 per bushel, to be delivered and paid for at the end of thirty days.   If wheat rises in value, A. will be a gainer, and if it goes lower he will lose; but inasmuch as the apparent object of the contract is an actual purchase of the wheat, it is not a gaming contract.   Nor could such a contract be justly regarded as a wager, although when the time for the delivery of the wheat arrived, it was agreed that B. should, instead of forwarding the wheat

[Fareira v. Gabell.]

to A., pay him the damages to which he would be legally entitled for a refusal to deliver; that is to say, the difference between the stipulated price and the actual value of the wheat at the time fixed for the fulfilment of the contract.    Such a settlement of the difference would not, if there was nothing more, be a sufficient ground for inferring that the contract was a gambling contract, or contrary to law.    But the case would be materially different if the evidence, taken as a whole, showed that A. and B. did not really intend to buy and sell; that there was no intention on the one hand to deliver, or on the other to receive, the wheat, and that their real purpose was to make a wager in the form of a contract of sale.    Hence, if A. and B. were to deal with each other in the way supposed, during a series of months or years, and it appeared in evidence that B. did not, in any single instance, forward the wheat, or have it in readiness for delivery, and that when the time arrived for the fulfilment of these successive contracts, they were always settled by the payment of a sum of money answering to the rise and fall in price, the question would then be one of fact for the jury, whether the parties really intended to buy and sell, or to make a wager on the price of grain.

" A like question arises for the consideration of the jury in this case—that is to say, whether the intention was that the defendant should become an actual buyer and vendor of stocks through the agency of the plaintiff, or whether the plaintiff expressly or impliedly agreed to act as the defendant's agent in gambling sales and purchases of stocks, which the defendant had not the means to deliver, and which it was no part of his intention to receive.    If the jury find that the transaction was a gambling one on Gabell's part, and known to be such by Fareira, and that the services and advances which constitute the cause of action were made and rendered in carrying it into effect, their verdict should be for the defendant; and it does not necessarily vary the legal aspect of the case, that some, or the greater number of the persons with whom Fareira dealt, on Gabell's account, were actual buyers and sellers, and did not intend to gamble; although, if such be the fact, it may be taken into view by the jury in determining the true nature of the contract as between Gabell and Fareira.

" It is, however, contended, by the plaintiff's counsel, that even if these were gambling operations on Gabell's part, and so understood by Fareira, he should still, in equity and good faith, be paid for the services which he rendered as Gabell's agent, and Gabell cannot rely on a fault which was common to both as a defence; and it is said in support of this proposition, that one who lends money, knowing that the borrower intends to gamble with it, may recover it back. This may, perhaps, be true as between such a borrower and lender, but I am clearly of opinion that one who should undertake to make a bet or wager for another, and advance the money staked would

have no right of action against his principal in the event of loss; and I can see no difference between such a case and that of an agent who renders services and expends money in conducting any other gambling operation."

The plaintiff excepted to this charge " because, although the jury should believe that the plaintiff had no interest in said stock contracts other than that of his commissions as a broker, yet the said charge was equivalent to a binding instruction for defendant."

The verdict was for defendant. Plaintiff took this writ and assigned the above charge for error.

*E. Cooper Shapley, David W. Sellers* and *George W. Biddle,* for plaintiff in error.—If the plaintiff can make out his case irrespective of the prohibited subject he can recover, and the defendant cannot set up a prior invalid consideration to defeat him. To prevent a recovery the very contract sued on must be void or illegal. The notes themselves, when in evidence, were sufficient to warrant a recovery: Faikney *v.* Reynous, 4 Burr. 2069 ; Petrie et al. *v.* Hannay, 3 Term R. 418 ; Tenant *v.* Elliott, 1 Bos. & Pul. 3 ; Farmer *v.* Russell, Id. 297 ; Bulmers, Ex parte, 13 Vesey 315 ; Montefiori *v.* Montefiori, 1 Wm. Black. R. 362 ; Osborn *v.* Moss, 7 Johns. 161 ; Biddis *v.* James, 6 Binn. 329 ; Swan *v.* Scott, 11 S. & R. 155 ; Fairbanks *v.* Blackington, 5 Pick. 93 ; Bredin *v.* Kingland, 4 Watts 420 ; Armstrong *v.* Toler, 11 Wheat. 258 ; Telford *v.* Adams, 6 Watts 433 ; Lestaspies *v.* Ingraham, 5 Barr 81 ; Thomas *v.* Brady, 10 Id. 169 ; Fox *v.* ·Cash, 1 Jones 207 ; Eyrick *v.* Hetrick, 1 Harris 488 ; Scott *v.* Duffy, 2 Id. 20 ; Ex parte Pyke, Law Rep. 8 Ch. Div. 754 : Smith *v.* Bouvier, 20 P. F. Smith 325.

*Thomas J. Diehl,* for defendant in error.—This case falls within that class of actions which the court has decided to be "wagering contracts," and the process of the law cannot be invoked to enforce it. The propositions advanced by plaintiff in error are well considered in the case of Ham *v.* Smith, 6 Norris 63.

The judgment of the Supreme Court was entered, March 10th 1879.

PER CURIAM.—The questions in this case were fairly submitted to the jury in a full and accurate charge by the learned president of the court below. The principles enunciated by him we consider as entirely settled in Brua's Appeal, 5 P. F. Smith 294, and Smith *v.* Bouvier, 20 Id. 325. In no view of the charge as a whole was it equivalent to a binding instruction for the defendant.

Judgment affirmed.