Louis Wagner, Assignee of Henry S. Louchheim and Frederick Leser, trading as H. S. Louchheim & Co., Appellant, v. Otto C. P. Hildebrand.

*Contract—Wagering contracts—Stock gambling—Buying on margin—Evidence.*

If it is the intention of the parties that an actual purchase of stock on margin shall be made by a broker, the transaction is legal, although the delivery may be postponed, or made to depend upon future conditions; but if the intention is that there is not to be a delivery to complete the purchase, but that the account is to be settled on the basis of a rise or fall in prices, it is a mere wager, and the contract cannot be enforced by either party.

In an action by an assignee of a firm of brokers to recover a balance alleged to be due in the purchase and sale of stocks, it appeared that the

accounts between the firm and the defendant covered a period of fifteen months, and involved purchases amounting to over $300,000, during which time no securities were delivered or tendered, except one purchase of stock for a special purpose amounting to $100. The calls on defendant were not to take up his stocks and bonds, but to deposit more margin. When the brokers were carrying securities to the amount of $150,000, they wrote to defendant that in ordinary times a margin of five per cent would be required, and that while they did not ask that he should put up that much, they desired that he should better protect his holdings, and added: "We will gladly allow you to withdraw money again as soon as the market improves." In addition to this, defendant testified that there was an understanding and agreement that he would not be called on to pay for the securities, but that the account would be settled by the payment of the difference in prices. There was other testimony to the same effect. *Held*, that a verdict and judgment for the defendant should be sustained.

Argued April 6, 1898. Appeal, No. 60, Jan. T., 1898, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1895, No. 911, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit to recover a balance alleged to be due in the purchase and sale of stocks. Before WILLSON, J.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

The suit here is brought in the name of the assignee against this defendant, but the assignee for the benefit of creditors is suing entirely in the right of Louchheim & Company, and has no higher claim than they. It is precisely the same as if suit were brought by themselves, so far as the relative rights of the parties are concerned. If the plaintiff, the firm of H. S. Louchheim & Co., in point of fact, as is testified to, purchased the shares of stocks and the bonds which are included in the statements which they rendered to the defendant and paid out their money for them upon his order and by his direction in a legitimate transaction, one which the law permits, and the defendant has failed to pay them for the stocks and bonds which they purchased in that way by his order, there is no answer to their claim ; they have a perfect right to say that you should render a verdict in their favor, and, if that be the true, correct state of the case, then you ought to render a verdict in favor of the plaintiffs for such an amount as will represent what they paid

out, and interest upon that, what represents the proper compensation for their services in the way of commissions, making allowance, as it is conceded you should in that event, for the value of the securities which they had in their hands which had not been sold, at their highest market value from some date, which plaintiffs claim should be the date of the assignment, and as to which I do not understand there is any objection from the other side. That is the plaintiff's side of the case. That is the plaintiff's right, provided you believe the fact to be what I have made the basis of the proposition which I have just stated. On the other hand, if the purchases and sales of shares of stocks and the bonds which the plaintiffs made were made by them in a series of transactions with the defendant which were not real transactions, and by real transactions I mean in a sense that when they made the purchases and the sales they understood, and had a right to understand, that they were making those purchases and sales for him as an ordinary purchaser, with no understanding upon their part that he never intended to take up or to have delivered to him the shares of stock or bonds, but that the only settlement of the transactions between them was by the payment by them to him of profits or by his payment to them of losses, his attitude towards them and his obligations towards them would be entirely different. Unquestionably, when a man goes into a broker's office and orders the broker to buy a certain number of shares of stock for him, if that is all, even though he deposits not the entire amount of the purchase either before or after the purchase, but simply a certain sum, which you may call, if you please, a margin, if it is simply the case of a man going into a broker's office and ordering him to purchase shares of stock or bonds upon a margin, then the broker has a right to assume that it is a genuine transaction. He has a right to buy the shares of stock or bonds and to hold the purchaser for the purchase money. As I have said to you already, the mere fact that the broker carries the stock, as you have heard the expression here, for the customer, is not a matter of moment one way or the other by itself. Because, if he purchased the stock, he might take it to somebody else and borrow money on it, and, in point of fact, of his own money only pay a small proportionate amount of that which was represented by the full price of the stock, and, if he chose to ask the broker

or to permit the broker to do it for him, there is nothing in that transaction by itself, which is illegitimate or which the law condemns. If, however, either by reason of an express arrangement between the customer and the broker, or by reason of anything which is said, or the manner in which the business is conducted, you believe, upon the evidence in this case, that the real understanding between the parties was that there was to be no delivery of that which was purchased; that the customer did not really intend to have any delivery made to him; that all that he was attempting to do was to bet upon the market, upon the varying prices of securities, and settle for the differences, then the law says that is what has been called a gambling transaction and cannot be enforced; and, if in a transaction or a series of transactions of that sort the net result is a loss, and the customer has not sufficient money or margin in the hands of the brokers to protect them, the brokers cannot by process of law collect that money from the customer.

In order that such a state of facts shall exist, it is necessary that there shall be something more than an intention on the part of the customer to carry on a series of wagering transactions. It must be an intention which by words or by acts is indicated to the broker, so that the broker shall have reason to know that the dealings which he is carrying on with his customer are not legitimate dealings; that the customer is not ordering the purchase of stocks or bonds for the purpose of taking them or holding them, but simply for the purpose of waiting for an advance in the market and selling or buying for the purpose of making a profit. In the same connection I desire to say to you that the fact that a man buys such securities or sells them for the purpose of making a profit out of a sale, or a purchase subsequently, does not in itself make the transaction a wagering or a gambling one. The purchase and sales of stock or bonds for the sake of realizing profits are perfectly legitimate and lawful. A man may buy one hundred shares of stock or bonds to the amount of $10,000, without any expectation of holding them for a series of years, or even a series of months, with the expectation that shortly thereafter he will be able to sell them at a profit. There is nothing in that which amounts to a gamble or wager. That is the very life of trade; that is the principle upon which all business dealing is conducted; a

merchant buys his goods with the expectation of selling them at a profit. So a man may deal in the same way legitimately in shares of stock or bonds, or any other securities. The point, you will perceive, is this: What is the real substantial nature of the relation which exists between the broker and the customer? Is it one in which the broker is merely assisting, co-operating with the customer in a series of wagers— I do not say speculation, because that is an improper word to use; speculation may be entirely lawful and proper — but, in a series of ventures, wherein it is not contemplated that there shall be any actual delivery of that which the broker buys for his customer, in which there shall be no actual transfer of the interest or right in the thing which is bought or sold on the part of the customer? If the transaction is, in point of fact, as understood by both parties, or, as it ought to be understood by both parties, a transaction of ventures like that, then the law says it is an unlawful transaction, and the broker in case of loss cannot recover the balance from the customer. But, if he is not advised of that, or, if there is nothing in the circumstances in the relation between him and the customer to advise him that that is the nature of the transaction, then he has a perfect right to claim to be paid whatever may be the balance that is due in a series of transactions.

I do not think in a case of this sort that a jury ought to be inclined by sympathy or for any other reason to jump at a conclusion in favor of one side or the other. I do not think that a man who, in the ordinary way, goes into a broker's office and orders the purchase of stock or bonds, or the sale of stock or bonds, and the broker, in pursuance of his orders, makes the purchases and pays out his money and gets the securities, has any special ground on which he can ask the sympathy of a jury, in case he loses in the transaction. As between two gamblers who are taking part in the same transaction, as far as the question of sympathy is concerned, I do not know that it ought to fall on one side rather than the other. At the same time the law says, and what the law says upon the subject is founded in very good reason, where the transaction is really a wager, a bet, a gamble, where it is not contemplated between the parties that it shall be a substantial transaction in which there shall be an out and out purchase and sale made in the interest of the customer, it

cannot be enforced. But, as I have said to you, where it is not such a transaction, where it is one in which there is nothing more than that the customer orders the purchase or sale, and the broker goes on and makes the purchase or sale without being advised, or the circumstances being such that he ought to understand and know that the customer is merely venturing upon the market with no expectation or intention to settle in any other way than for the differences in cases of profits or losses, in that case the broker has a perfect right, not merely in morals, but in law, to call upon the customer to pay him whatever shall be found due under such circumstances.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was the charge of the court, quoting it.

*Oscar Leser* and *William H. Staake*, for appellant.—The bargain was lawful: Peters v. Grim, 149 Pa. 163; Hopkins v. O'Kane, 169 Pa. 478; Smith v. Bouvier, 70 Pa. 325; Maxton v. Gheen, 75 Pa. 166; Stewart v. Parnell, 147 Pa. 523; Fareira v. Gabell, 89 Pa. 90; Roundtree v. Smith, 108 U. S. 269; Brua's App., 55 Pa. 294; Dickson v. Thomas, 97 Pa. 278; Ruchizky v. DeHaven, 97 Pa. 202; Thacker v. Hardy, L. R. 4 Q. B. Div. 685; Forget v. Ostigny, L. R. App. Cas. (1895) 318; McNaughton v. Haldeman, 160 Pa. 144; Champlin v. Smith, 164 Pa. 481; Albertson v. Laughlin, 173 Pa. 525; Anthony v. Unangst, 174 Pa. 10; Repplier v. Jacobs, 149 Pa. 167; Wynkoop v. Seal, 64 Pa. 361; Pixley v. Boynton, 79 Ill. 353; Ashton v. Dakin, 4 H. & N. 867; Sawyer v. Taggart, 18 Am. L. Reg. 222.

*Edwin O. Michener*, for appellee, cited Albertson v. Laughlin, 173 Pa. 530.

OPINION BY MR. JUSTICE FELL, July 21, 1898:

The law relating to stock-gambling transactions has been considered in a line of cases extending from Brua's Appeal, 55 Pa. 294, to Anthony v. Unangst, 174 Pa. 10, and it has been firmly settled. A purchase of stock on margin for speculation is not necessarily a gambling transaction. If it is the intention of the parties that a real purchase shall be made by the broker,

although the delivery may be postponed or made to depend upon future conditions, the transaction is legal; if it is the intention that there is not to be a delivery to complete the pur-. chase, but that the account is to be settled on the basis of a rise or fall in prices, it is a mere wager, and the contract cannot be enforced by either party : Peters v. Grim, 149 Pa. 163. The distinction made in the cases between transactions where there are actual purchases or sales and deliveries made or contemplated, and transactions which by the mutual understanding of the parties are to be settled by the payment of differences, is very accurately and clearly defined in the charge in this case. Some of the detached sentences of the charge which have been assigned as error may be open to criticism when considered alone. But they are not to be so considered. In connection with the context they are free from error, and we find no possible ground for objection to the charge when it is taken, as it should be, as a whole.

The extent of the transactions and the conduct of the parties in relation to them tend to sustain the averment that no real purchase or sale was ever contemplated, but merely a wager on the fluctuation of the market. The accounts cover a period of fifteen months, and involve purchases amounting to over $300,000. During this time not a bond or share of stock was delivered or tendered, except a purchase of stock amounting to $100, which was made for a special purpose. The calls on the defendant were not to take up his stocks and bonds, but to deposit more margin. When the brokers were carrying stocks and bonds to the amount of $150,000, they wrote the defendant that in ordinary times a margin of five per cent would be required, and that while they did not ask that he should put up that much they desired that he should better protect his holdings, and added : " We will gladly allow you to withdraw money again as soon as the market improves." In addition to this the defendant testified that there was an understanding and agreement that he would not be called on to pay for the stocks and bonds, but that the account would be settled by the payment of the difference in prices, and there was other testimony that his liability was limited by agreement to the amount he deposited as margin.

The judgment is affirmed.