# Snider, Appellant, v. Harvey.

Contract—Wagering contract—Broker—Evidence.

In an action by a broker against a customer to recover a balance alleged to be due on a series of stock transactions, a nonsuit is properly entered where it appears that not a single transaction was alleged to have been actually settled by delivery, and the testimony of the parties shows that there was never any intention that actual deliveries should be made.

Argued May 7, 1906. Appeal, No. 253, Jan. T., 1905, by plaintiff, from order of C. P. Fayette Co., Sept. T., 1904, No. 331, refusing to strike off nonsuit in case of D. R. Snider and J. H. Campbell, under the firm name of D. R. Snider & Co., v. William L. Harvey. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Affirmed.

Assumpsit to recover a balance of account alleged to be due. Before UMBEL, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*J. J. Cray*, of *McDonald & Cray*, with him *Howard & Patterson*, for appellant.

*John M. Core*, for appellee, was not heard.

PER CURIAM, May 24, 1906:

The transactions between these parties extending over a period of months were always in the form of settlements for

differences.   It is true that the accounts were rendered in the guise of sales but plaintiff's own testimony shows that it was a cover of transparent paper.   Not a single transaction was even alleged to have been actually settled by a delivery or in any other way than by an adjustment in money of the profit or loss. Had the appellant testified that it was the bona fide intention of the parties, or even of himself, that actual delivery should be made of the purchases or sales respectively, it would then have been a question for the jury notwithstanding the uniform apparent character of what was actually done.   But the plaintiff never brought himself up to that point.   The nearest he would come to it was that he could and would have made delivery if it had been asked.   But it was manifest that he knew it would not be asked for.   To the question, " Did you ever offer to hand over to William L. Harvey a single certificate for a share of stock that he had bought on your board ?   A. He never asked for it.   Q. Answer that question, yes, or no ?   A.  No.  Q. Did he ask you to deliver it?  A. No.  Q. But the settlements were made from time to time just as the market rose and fell ? A. When he closed his transactions. . . . Q. How were they settled?   A. When the transactions were closed up they were paid.  Q. In goods or money ?  A.  In cash, whatever the profits were."

This is a fair specimen of the testimony and it is creditable to the witness that he was not willing to go beyond the truth in his statement of the facts.   It is by them that the issue must be determined:  Jennings v. Morris, 211 Pa. 600.   The case is another illustration of the unpleasant duty sometimes put upon courts to aid a dishonest debtor to escape payment of his just obligations.   Speaking for myself I do not believe in the justice, morality or wisdom of extending the principle of " public policy " to the protection of transactions in fact dishonest.   But the law is too firmly settled for the courts to disregard it.

Judgment affirmed.