Pennsylvania Co-Operative Potato Growers, Inc. *v.* Naunczek, Appellant.

Argued March 1, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*John Arnold Crisman,* for appellant.

*Thomas J. Evans,* for appellee.

OPINION BY MONTGOMERY, J., March 18, 1965:

This is an action in assumpsit by the Pennsylvania Co-operative Potato Growers, Inc. to recover for advances made by it to cover losses incurred by the defendant Naunczek in the purchase and sale of contracts, or futures for Maine potatoes.

The case was tried before a judge and jury, and a verdict rendered for $4,622, the full amount of the plaintiff's claim. The defendant's motion for a new trial was overruled and judgment was entered on the verdict. Defendant appeals.

Appellee-plaintiff is a nonprofit corporation formed to assist growers market potatoes. Acting through a

broker the corporation gives members the opportunity to deal in future contracts for the sale of potatoes and to "hedge" on the sale of their own crops. Plaintiff is a member of the New York Mercantile Exchange and all orders for the sale and purchase of potato futures were made under the regulations of that exchange, through a New York broker. Appellant-defendant is a farmer in Berwick, Pennsylvania, and one of the largest potato growers in the state.

The evidence shows defendant signed a contract February 5, 1958, authorizing plaintiff to buy and sell potato futures for him on a marginal basis, and thereafter placed numerous orders for potato futures with plaintiff. In the first of these contracts defendant was hedging on his own crop. Subsequently, over a period from February 25, 1958, until April 14, 1958, defendant bought and sold potato futures in carload lots almost daily as shown by his account sheets with plaintiff. It is clear that in dealing in these futures subsequent to February 25, 1958, defendant was acting as a speculator, and not hedging on his own crop. During this latter period defendant was continually in and out of the market and initially made money on these transactions. In the latter part of April, 1958, however, the market dropped so rapidly that plaintiff was unable to sell nineteen carloads of potato futures on the day defendant ordered them sold. As a result defendant suffered losses and allegedly owed plaintiff a balance of $4,622 on the marginal account, or the amount for which suit was brought.

On appeal, defendant seeks a new trial solely on the ground that the evidence shows the transactions involved were not bona fide future contracts calling for delivery, but were illegal gambling operations based entirely on market differentials, thereby barring recovery by plaintiff.

Defendant cites *Snider v. Harvey*, 215 Pa. 538, 64 A. 687 (1906), for the proposition that a broker cannot recover a balance on stock transactions which are illegal as constituting a gambling operation where there is no intention to actually execute the contracts and deliver the stock. The evidence in the case showed defendant first engaged in hedging as to his own potatoes, and later became an extensive speculator without regard to hedging. Plaintiff's witnesses explained at length the difference between dealing in futures by way of hedging as opposed to speculation. Under the evidence defendant was clearly speculating in potato futures at the time he incurred the losses and overdrafts with plaintiff. However, nowhere in the evidence does it appear that the parties did not intend the future potato contracts to involve delivery, and there is no evidence in the record to show that these transactions sued on were illegal gambling transactions because they were not genuine. The contract with plaintiff, signed by the defendant, expressly stated that "contracts for commodities for actual delivery in the future are contemplated." The transactions were all carried out through a New York broker under the provisions of the New York Mercantile Exchange. Additional defendant Barkley[1] and Mr. Aspinwall, the broker, testified that the purchases and sales were genuine. Defendant referred to the transactions as a "lottery" but his testimony did not show that the contracts were not genuine or that delivery was not intended. Defendant did not allege throughout the trial, in his affidavit of defense, or otherwise, that these contracts were illegal gambling transactions. Rather his defense was based on plaintiff's inability to dispose of nineteen carloads of potatoes on the day

---

[1]The defendant withdrew his action against the additional defendant.

ordered, and on the alleged fraud of plaintiff in stating that sales could be made on the same day as ordered. None of defendant's points for charge covered the issue of illegality he now raises and the jury was not asked to pass on this issue. Apparently the defense of illegality as gaming transactions is an afterthought, raised for the first time in the court below on defendant's motion for a new trial.

The evidence here shows that dealing in commodity futures is legitimate and performs a lawful economic function in stabilizing the market. Such contracts are not illegal or unlawful, even on margin, so long as the transactions are bona fide and delivery is intended. *Fearon v. Little,* 227 Pa. 348, 76 A. 72 (1910) ; *Jennings v. Morris,* 211 Pa. 600, 61 A. 115 (1905) ; *Wagner v. Hildebrand,* 187 Pa. 136, 41 A. 34 (1898) ; *Fareira v. Gabell,* 89 Pa. 89 (1879). Where stocks are actually bought and sold, even though such stocks are speculative and bought on a margin account, and for profit rather than investment, the transaction is not invalid as a gambling contract. *Goodbody v. Margiotti,* 323 Pa. 529, 187 A. 425 (1936). Under these authorities hedging would seem permissible as a device to secure those who make contracts for future delivery against the fluctuations of the market, even though it may be contemplated that the party may close his hedge by setoff instead of by actual delivery of the commodity. See generally 38 C.J.S. Gaming §9, page 90; 24 Am. Jur., Gaming and Prize Contests, §74; 53 A. L. R. 2d 362.

The rule which is stated in *Fearon v. Little,* supra, as to the purchase and sale of securities would seem equally applicable to the instant transactions. In that case it was stated, 227 Pa. 348 at 352, 76 A. 72 at 73, quoting *Peters v. Grim,* 149 Pa. 163, 24 A. 192 (1892), " 'A purchase of stock on margin for speculation is not necessarily a gambling transaction. If

it is the intention of the parties that a real purchase shall be made by a transfer of them, although the delivery may be postponed or made to depend upon future conditions, the transaction is legal; if it is the intention that there is not to be a delivery to complete the purchase, but that the account is to be settled on the basis of a rise or fall in prices, it is a mere wager, and the contract cannot be enforced by either party.' "

Such transactions are presumed to be in conformity with the law and the burden is upon the party asserting illegality to prove the same. *Jennings v. Morris,* supra; *Hosack v. Taylor Brothers,* 142 Pa. Superior Ct. 83, 15 A. 2d 489 (1940).

Since there is no evidence that the transactions sued on were illegal as gambling contracts, there is plainly no basis for us to grant a new trial on this ground. In any event, an appellate court will not review a case on a different theory from that on which it was tried in the court below, nor consider questions other than those which were presented at trial. *Fisher v. Brick,* 358 Pa. 260, 56 A. 2d 213 (1948). If defendant had evidence to show the dealings in futures were mere paper transactions and illegal, he should have raised the issue and presented the same at the trial. The defense sought to be interposed is plainly an afterthought and one which may not be raised after trial. *Brunetto v. Ferrara,* 167 Pa. Superior Ct. 568, 76 A. 2d 448 (1950).

Order affirmed.