WILLIAM B. KENDALL AND C. HOWARD WHITLOCK, PARTNERS, AS KENDALL & WHITLOCK, v. SAMUEL F. FRIES.

Argued June 7, 1904—Decided November 7, 1904.

In a suit by a broker against his customer upon a check, where the defence is that the check grew out of a gambling transaction, it is not enough to prove that stocks were bought on a margin; that the defendant was speculating; that the stocks were never assigned to the defendant, and that he bought options on cotton. These facts do not, under the circumstances of this case, justify the conclusion that the transactions were a mere dealing in differences.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, GARRETSON and SWAYZE.

For the plaintiffs, *Frank T. Lloyd* and *F. Morse Archer.*

For the defendant, *Frederick A. Rex.*

The opinion of the court was delivered by

SWAYZE, J. This is an action upon two checks given by the defendant to the plaintiffs. The defence was that they were given in substitution for other checks, and that the transaction originated in a gambling contract for speculation in stocks and cotton. The trial judge directed a verdict for the plaintiffs.

We have not found it necessary to consider whether the checks were given in exchange for money or its equivalent, and the money used to take up other checks, or whether the whole series of checks is connected with the original transaction, for the reason that we fail to find any evidence sufficient to warrant a verdict that the original transaction was illegal.

VOL. XLII. 26

The only evidence on that subject is that the stocks were bought on a margin; that the checks were for the purchase of options on cotton; that the defendant was speculating, and that the stock was not at any time assigned or given to the defendant. This evidence does not justify a conclusion that the parties were merely dealing in differences. As was said by the present Chancellor, in *Flagg* v. *Baldwin,* 11 *Stew. Eq.* 219, 227, "the act is not intended to interfere with the right of buying and selling for speculation. The line is to be drawn between what is legitimate speculation and what is unlawful wager. When property is actually bought, whether with money or with credit, the purchaser and owner may lawfully hold it for a future rise and risk a future fall. With such transactions, the law does not pretend to interfere. They are within the line of lawful speculation."

The fact that the defendant was speculating does not prove he was merely dealing in differences. The fact that he bought on margin proves only that he bought in part for cash, in part on credit. The fact that he bought options proves only that he made contracts for future delivery, which have never been condemned by our courts. The fact that the stock was never actually assigned to him does not prove that it was not intended to be assigned. All of these facts, taken together, show at most a speculation in stocks and cotton—in part for cash, in part upon credit—and they fall far short of proving that the intention was merely to deal in differences.

In all of the cases in this state in which the transactions have been held illegal, other circumstances were present.

In Flagg *v.* Baldwin, the decisive test was the enormous disproportion between the extent of the transactions and the cash margin deposited and the fact that the purchases were known to the brokers to be far beyond their customer's pecuniary ability, which facts corroborated Flagg's testimony that there was not to be any act of delivery of stocks, and that he should not be required to pay for them.

In *Minzesheimer* v. *Doolittle,* 15 *Dick. Ch. Rep.* 394, the decisive test was the enormous disproportion between the

cash furnished by Doolittle to the complainants and the amount of the nominal sales and purchases made on his account, and the fact that the transactions always provided for nominal deliveries several months in the future, while it was expected and intended that before the time for delivery should arrive each transaction should be covered, so far as it could be, by a counter transaction, and only the differences should be paid and adjusted.

Similar facts, in *Sharp* v. *Stalker,* 18 *Dick. Ch. Rep.* 596, led the Vice Chancellor to draw the same inference.

In *Pratt* v. *Boody,* 10 *Dick. Ch. Rep.* 175, the fact that some stock was actually delivered was relied on by the Vice Chancellor as showing that the contract was not a mere dealing in differences, although the stock delivered bore but a small proportion to the total transactions. In this respect, the view of the Vice Chancellor was sustained by the Court of Errors and Appeals. *Pratt* v. *Boody,* 11 *Id.* 429.

The evidence in the present case did not show that the transaction was a mere dealing in differences. The defence therefore failed, and the plaintiff was entitled to have a verdict directed in his favor.

The rule to show cause should be discharged, with costs.