HERBERT A. CAMERON, PLAINTIFF, v. OTTO PREU, DEFENDANT.

Argued February 24, 1911—Decided June 13, 1911.

The evidence examined concerning transactions and dealings in stocks between stockbrokers and their customer and a verdict for the defendant held to be against the clear weight of evidence.

On rule to show cause.

Before Justices GARRISON, PARKER and VOORHEES.

For the plaintiff, *Frederic M. P. Pearse.*

For the defendant, *J. Lefferts Conard.*

The opinion of the court was delivered by

VOORHEES, J. This is the plaintiff's rule to show cause why a verdict should not be set aside and a new trial granted. The action was brought by the assignee of certain brokers to recover, on an account stated, the sum of $6,267.20, the balance due upon the purchase and sale of stocks. The verdict was for the defendant.

The account appears to have been opened in September, 1908, with Trippe, Thompson & Company, and on December 31st, 1909, by the written order of the defendant, the account was transferred to Trippe & Company, the successors of the former firm. The transactions continued, and statements seem to have been rendered to the defendant monthly until the close of the transactions. These statements are certified to by the defendant as correct.

The plaintiff's proof was in the form of an itemized account dated February 28th, 1910, showing the above balance, with certain shares of stock as security. Under date of March 3d, it is certified by the defendant to be correct.

At the foot of this, as well as the previous statements, there is printed a note that actual delivery is contemplated and that the party giving the orders so understands and agrees. The defendant endeavored to show that when he opened his accounts, he sent the defendant a deposit called a margin, that that fact made his transactions speculations. He also endeavored to prove a custom of the New York Stock Exchange to the effect that when a margin is exhausted, the broker must sell the stocks, but that there then ensues no further liability on the part of the dealer.

The existence of this custom was denied, and the evidence was such as clearly to indicate that the defendant was not competent to prove it. Indeed, he did not prove any custom, but testified merely to what he understood to be the custom,

and admitted that he had never read the rules of the exchange.

I think clearly, by the weight of evidence, the defence was not made out that a marginal transaction, after the margin had been exhausted, resulted in no further liability to the defendant, and hence the verdict in that regard should not stand.

Involved in this defence, is that the dealings were gambling transactions. In *Sharp* v. *Stalker*, 18 *Dick. Ch. Rep.* 596, Vice Chancellor Stevens says that the fact that the broker actually bought or sold the stocks from or to others for his customer, is not decisive as to whether transactions are lawful or gaming, but the question is whether as between broker and customer, the dealings are really dealings in differences.

And so the court, in that case, made two guides for the determination of the matter—*first*, the original agreement between the parties, and *secondly*, their subsequent correspondence and acts.

As to the initial transactions, the contention of the defendant is that the transactions were commenced without any specific understanding, but simply by a deposit and an order for stock on margin.

In *Kendall & Whillock* v. *Fries*, 42 *Vroom* 401, the only evidence was that the stocks were bought on a margin, and it was held that that was not enough to justify the conclusion that the parties were merely dealing in differences; and the fact that the defendant was speculating did not prove a gambling transaction, and further, that buying on margin proved only that stocks were bought, part for cash and part on credit. See, also, *Thompson* v. *Williamson*, 1 *Robb.* 212. So that the inception of the dealings is without significance to charge the parties with dealing in differences caused by the fluctuation of stocks.

Turning then to the subsequent correspondence and dealings, we first notice the accounts above referred to and the declarations therein made. These accounts were not large, taking the value of the securities on hand. The stocks seem

to have been actually bought by the brokers. They have credited the defendant with the dividends, as they were declared and received, during the holding of the stocks by the brokers.

It was not shown that the defendant was not of sufficient ability to take up the stocks, by paying for them, or that the transactions were disproportioned to his financial strength.

The parties had agreed that the stocks were to be taken up and delivered, and the proceeds of sales made by the brokers were credited to the account. The correspondence between the parties shows that while the defendant put up a margin, yet until the suit was brought, he undoubtedly felt that he was liable to pay the amount shown by the account to the broker.

There was no dealing by the brokers, on their own account; they did not execute discretionary orders, but each order was given in writing, by the defendant. The defendant was notified of each purchase or sale, and the correspondence shows that the defendant consulted with the brokers, as to the disposal or retention of the stocks in several cases.

In March, 1910, the correspondence shows that the value of the stocks held by the brokers was inadequate security for the balance due from the defendant, and the brokers called for more margin. The defendant replied that he was willing to have them sell certain stocks and keep certain others, "and in this case, I would try to gradually take up same entirely."

We conclude, therefore, that there is nothing in the dealings of the parties pointing to the conclusion that their transactions were illegal. The verdict for the defendant was against the clear weight of evidence, and must be set aside and the rule made absolute.