WESTERN UNION TELEGRAPH COMPANY *v.* A. M. LITTLEJOHN.

1. "FUTURES." *Buying stocks for present delivery. Act* 1882, *p.* 140.

   Buying and selling stocks, not for future but present delivery, although purchases and sales follow each other in rapid succession, is not dealing in "contracts commonly called futures," within the meaning of the act of 1882 (Laws, p. 140) declaring such dealings unlawful. The statute condemns mere gambling on the course of the market. with reference to the future, and without any purpose to deliver the subject of the sale.

2. NEW TRIAL. *Evidence of loss. Uncertainty. Failure to object.*

   In an action to recover of a telegraph company for loss caused by delay of certain telegrams, between plaintiff and a broker, giving directions as to the purchase and sale of stocks, where the only evidence as to the loss is, in general terms, that by the delays plaintiff lost certain sums, which he paid, a verdict for plaintiff therefor will not be set aside where defendant failed to require of the witness a more explicit statement as to how the delays of the telegrams caused the loss.

FROM the circuit court of the first district of Coahoma county. HON. R. W. WILLIAMSON, Judge.

Action begun October, 1889, by A. M. Littlejohn against the Western Union Telegraph Company to recover for loss sustained through the delay of defendant in the transmission and delivery of certain telegrams. The declaration merely alleges that plaintiff delivered to the defendant's operator at Clarksdale, on July 1 and 3, 1889, two certain messages for transmission to A. M. Hogin, Memphis, Tenn., and that on July 3 and 10, 1889, A. M. Hogin delivered to defendant, in Memphis, Tenn., three messages to be transmitted to plaintiff at Clarksdale, Miss.; that these messages were negligently delayed by defendant, to the damage of plaintiff $662.50. For a statement of the damage the declaration refers to the account filed with it. The itemized account is as follows: "Actual loss on one hundred shares American Cotton Oil trusts, $412.50; actual loss on fifty shares of same, $250; statutory penalty on five messages, $125."

Plaintiff, at the time of the transactions in question, was in Clarksdale, Miss., and Hagin was a broker in Memphis, Tenn. They had, during the month of July, 1889, repeated, if not daily, transactions with each other by means of telegrams relating to purchases and sales of stock of the American Cotton Oil Company, Littlejohn being the buyer or seller, and Hagin acting as a mere broker. The telegrams, which were in cipher, had reference to stock in said company. The first was one from plaintiff to Hagin, and, translated, was as follows: "Close purchase fifty trusts. Hold sale one hundred. Keep me well posted." This was delivered by plaintiff to defendant's operator at Clarksdale for transmission on the morning of July 1, 1889. On the morning of July 3, plaintiff having received no reply from Hagin, sent him this message: "We telegraphed you, but have no reply, on July 1. Cancel order in full. Telegraph state of the market, please." At 4 o'clock P.M. of the same day, plaintiff received, under the same cover, from Hagin,

two messages, one reading: "Close fifty trusts 55¼ opening," the other: "Trusts opened 55⅝. Now 56⅝. No opinion." The first of these messages was delivered by Hogin to defendant's operator, in Memphis, on the morning of July 2, but not sent until after receipt of the second one on the next day, when, without any mention of the delay, both were sent on, and delivered to plaintiff at the same time. Still another cipher message on the same subject was sent by Hogin to plaintiff on July 10, but the record is silent as to its purport, and it is included, presumably, as the basis of a claim for the statutory penalty of $25 for its delay. It does not seem to be denied that there was unreasonable delay in transmitting and delivering these telegrams.

As intimated in the opinion, the testimony as to how the delay caused the loss is meager. It appears that it arose from fluctuations in the value of the stocks, to which the telegrams referred. Hogin testified that, because of the delay of one of the first telegrams from plaintiff, there was a difference in price of the stocks of about $250, and that plaintiff lost that amount by the transaction which it directed. Plaintiff testified that, by reason of the delays in the telegrams, he lost about $500, which he had to pay, and that, if he had received the telegrams promptly, he would have made more than $100; that in the trade directed to be made by the first telegram he lost $212.50, and that in the transaction of July 3, he lost $400, for which amounts Hogin made draft on him, and which he paid. He referred for a showing of his loss to statements of account against himself, made up by Hogin at the time, and exhibited in the record, but these statements are not explained, and are, for the most part, unintelligible.

It is contended by defendant that the transactions between plaintiff and Littlejohn constituted a dealing in futures within the meaning of the act of March 7, 1882 (Laws, p. 140), making it unlawful to deal in "contracts commonly called futures," and providing that no money advanced for the purchase of

futures, nor any agreement for the payment of any sum for such purchases, shall be enforced in this state.

The testimony showed that plaintiff was president of a cotton oil mill at Rosedale, and owned stock of the American Cotton Oil Company, having in his possession at Clarksdale, and on deposit elsewhere, certificates of the stock to a large amount. Plaintiff testified that he did not consider the transactions with Hagin in the nature of "future dealings;" that he bought or sold certain stock through Hagin at quotations which were immediately current, and with no reference to the future; that he paid them cash, and each transaction was closed upon his order to Hagin; that no actual delivery of said stock was made, because it was not required by either party; that in one instance, in similar transactions with another party, he had insisted upon the actual stock being delivered, and could have transacted all the business that way, had it been desirable; that he had never heard such transactions classed as future contracts; that the trades were entirely based on daily quotations of the market. Hagin testified that he acted merely as a broker; that he had no stock of the American Cotton Oil Company on hand for plaintiff, or anyone; that there was never any stock delivered, although he stood ready to deliver if it were demanded; that settlements were made for the difference according to changes in the market value; that he understood from Littlejohn that he owned stock, and was able to make delivery. There was a verdict for plaintiff for $785.48. Judgment accordingly, and, after motion for new trial overruled, defendant appeals.

*Mayes & Harris,* for appellant.

This was a dealing in futures within the contemplation of the act of 1882. It was a plain case of buying and selling on speculation, and the fact that the purchases and sales were intended to follow in quick succession makes no difference. It is fully within the evil of the statute. The contracts sought to be made being unlawful, they cannot be the basis for dam-

ages on account of delay or failure to deliver them.   83 Ga.,
25; 11 Fed. Rep., 193.

. *J. W.* and *W. D. Cutrer*, for appellee.

There is not, in all the testimony, any indication that a deal-
ing in futures was contemplated or effected.   Littlejohn had
the stock certificates, and was prepared to deliver if he sold
them.   Littlejohn testified that he stood ready to deliver the
stocks.   He was in no sense a gambler on the market, dealing
in "puts and calls and straddles."   The purpose of Littlejohn
will control no matter what may have been the intention of
anyone else.   *Bibb* v. *Allen*, 149 U. S., 481.

CAMPBELL, Special Judge, delivered the opinion of the court.

The verdict is made up of the two items of damages claimed
and sworn to by Littlejohn, viz., $212.50 and $400, and 6 per
cent. interest, and the statutory penalties are not included in the
recovery, and therefore no question arises as to the penalties.

The dealing between Littlejohn and his broker in Memphis
was not such as is "commonly called futures," and the ques-
tion argued as to that is not involved.

The dealing consisted of buying and selling certain stocks,
not for future delivery, but for present delivery; and although
purchases and sales might follow each other in rapid succession
(daily or hourly), that did not constitute dealing in futures as
meant by the statute.   It condemns mere gambling on the
course of the market by buying or selling, on a margin, with
reference to the future, and without any purpose to deliver the
subject of the sale.

There were some errors committed in the trial in admitting
incompetent testimony against the defendant, but no harm was
done by this, as the competent testimony covered the points to
which the incompetent related, and the error is not ground for
reversal.

The only remaining question is as to the sufficiency of the
evidence to sustain the verdict.   The seemingly unreasonable

delay to deliver the messages is shown, and that their character was sufficiently known to the agents of the defendant, and that, in consequence of this delay, unaccounted for and unexcused, the plaintiff lost in one transaction, $212.50, and, by the delay of a certain other message, $400, which he paid. How this occurred is not shown, but the defendant did not require a specific explanation by the witness as to how the delayed telegram caused this loss, and permitted his asseveration of the loss by reason of the negligence complained of, to go without explanation, and the jury was authorized to accept as true the fact of loss as stated, and to give a verdict accordingly.

*Affirmed.*

On account of the illness of Woods, J., J. A. P. Campbell, Esq., a member of the bar, was commissioned and sat in his stead in this and other cases.