John S. Hopkins, Receiver of Laughlin and McManus, v. Arthur O'Kane, Appellant.

*Contract—Gambling contract—Purchase of stocks upon margin.*

A judgment entered on a judgment note given to a broker to secure margins will not be opened where the evidence shows that the broker at defendant's request, and with defendant's money, bought shares of stock, and received and retained the certificates until at defendant's request they were sold again; that the proceeds of the stock were retained by the broker, and used by him in part payment of other stock purchased at defendant's request; and that the purchase and sale of stocks continued in this way until the defendant was in the broker's debt, when the judgment note in question was given to secure the balance due.

Argued April 1, 1895. Appeal, No. 167, Jan. T., 1895, by defendant, from order of C. P. No. 1, Phila. Co., June T., 1893, No. 707, discharging rule to open judgment. Before STER-RETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Rule to open judgment.

From the depositions taken in support of the rule, it appeared that in November, 1892, defendant directed Laughlin and Mc-Manus, brokers, to purchase two hundred shares of Reading Railroad stock, for which he paid in full. The brokers received and retained the certificate for the stock, and in December, 1892, at defendant's request resold the stock and retained the proceeds. Subsequently defendant directed the brokers to purchase shares of a traction company, and these in turn were sold by the brokers, and the proceeds retained by them. Simi-

lar transactions took place until on February 28, 1893, when defendant was indebted to Laughlin and McManus in the sum of $2,000, for which the judgment note in suit was given. Judgment was entered upon the note by the receiver of the firm of Laughlin and McManus, and subsequently defendant obtained a rule to open the judgment on the ground that the debt grew out of gambling transactions.

The court discharged the rule, and defendant appealed.

*Error assigned* was above order.

*William S. Stenger*, *William H. Shoemaker* with him, for appellant.—Transactions in stocks by way of margins, settlement of differences and payment of gains or loss, without intending to deliver the stocks, are mere wagers and void: Fareira v. Gabell, 89 Pa. 89; Dickson v. Thomas, 97 Pa. 278; Ruchizky v. DeHaven, 97 Pa. 202; North v. Phillips, 89 Pa. 250; Waugh v. Beck, 114 Pa. 422; Harper v. Young, 112 Pa. 419; Griffith v. Sears, 112 Pa. 523; Griffith's App., 16 W. N. C. 249.

And it is the province of the jury to determine the nature of the transaction and to ascertain what the intention of the parties was: Fareira v. Gabell, 89 Pa. 89; Kirkpatrick v. Bonsall, 72 Pa. 155; Peters v. Grim, 149 Pa. 163; Gaw v. Bennett, 153 Pa. 247.

*Thomas R. Elcock*, *Bernard Gilpin* with him, for appellee.— The transactions between defendant and his broker were the actual purchases and sales of stocks, and not merely purchases and sales on margin: Maxton v. Gheen, 75 Pa. 166; Smith v. Bouvier, 70 Pa. 325; Smith v. Kammerer, 152 Pa. 98.

The agreement to enter judgment having been fully executed the court below was right in refusing to open the judgment: Whitmire v. Montgomery, 165 Pa. 253.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

There is nothing in this case which would justify disturbing the judgment. It ought not to be necessary to say again after Peters v. Grim, 149 Pa. 163, and other cases, that a purchase of stocks on margin is not necessarily a gambling transaction.

Stocks may be bought on credit, just as flour or sugar or anything else, and the credit may be for the whole price or for a part of it, and with security or without it. "Margin" is security, nothing more, and the only difference between stocks and other commodities is that as stocks are more commonly made the vehicle of gambling speculation than some other things, courts are disposed to look more closely into stock transactions to ascertain their true character. If they are real purchases and sales, they are not gambling though they are done partly or wholly on credit.

The appellant himself testified that the first transaction involved in this case was his purchase of two hundred shares of Reading. "I bought them outright," and paid for them. Shortly afterwards he sold them, and on his order the brokers bought Traction stock, and retained the proceeds of the Reading as part payment for it. The subsequent transactions were of the same character, actual purchases and sales in which the stocks bought were received by the brokers for defendant, and those sold delivered by them for him to the purchasers. There was all the time on the broker's book a standing credit to appellant of the money received on his account from the sale of the Reading stock, and the subsequent debits and credits for the later purchases and sales. The account closed unfortunately for appellant with a balance against him, but there is no allegation, certainly no evidence, that it was not correct.

Judgment affirmed.