### 10869

### SUMNER v. BANKHEAD.

#### (111 S. E. 891)

1. SPECIFIC PERFORMANCE—GRANT OF SPECIFIC PERFORMANCE IS AD-
   DRESSED TO COURT'S DISCRETION, AND REFUSAL IS NOT ERROR
   WHERE THE CONTRACT IS SPECULATIVE.—Specific performance is ad-
   dressed to the sound discretion of a court of equity, and where
   the Judge found as a matter of fact that the contract was
   speculative, and such finding is abundantly sustained by the evi-
   dence, showing that the seller did not own the land at the time he
   made the contract to sell, and that he made a contract with his
   agent whose business it was to negotiate sales to divide the for-
   feiture money provided by the contract, his decision must be
   affirmed.

2. SPECIFIC PERFORMANCE—WHERE CONTRACT PROVIDED INITIAL PAY-
   MENT AS MEASURE OF DAMAGES FOR BREACH, IT WAS PROPER TO
   GIVE NO DAMAGES IN ACTION FOR SPECIFIC PERFORMANCE.— In an

---

Note: The question of inference as to character of transaction
arising from fact that it was on margin is discussed in a note in
22 L. R. A. (N. S.) 174.

action for specific performance, the Court did not err in refusing damages for breach of the contract, where the contract itself provided the measure of damages in the forfeiture of the initial payment which has 'been paid.

Before MOORE, J., York.   July, 1921.   Affirmed.

Action by R. E. Sumner against J. W. Bankhead. From judgment for defendant plaintiff appeals.

*Messrs. Wilson & Wilson* and *Marion & Marion,* for appellant, cite: *Right of vendor to enforce specific performance*: Rich. Eq. Cas. 235; 16 S. C. 89; 21 S. C. 121; 21 S. C. 205; 48 S. C. 176; 92 S. C. 352; 10 S. C. 221; 107 S. C. 465; 11 Rich. 54; 12 Rich. 343; 53 S. C. 315. *Right rests in judicial discretion*: 53 S. C. 572. *Should be decreed unless inequitable or unjust*: 100 S. C. 632; 90 S. E. 64; 62 S. E. 417. *Contract not speculative as* 114 S. C. 245; 36 Cyc. 574. *To relieve vendee from speculative bargain would defeat purpose of the Court*: 1 Rich. Eq. 404; 57 S. C. 393. *Even if performance denied, complaint should not have been dismissed*: 100 S. C. 306; 57 S. C. 279.

*Messrs. Gaston & Hamilton,* for respondent, cite: *Contract speculative*: 114 S. C. 245; *and not such a one as the Courts will enforce*: 105 S. C. 176; 84 S. C. 265; 5 Rich. Eq. 571; 1 Hill Eq. 51. *Plaintiff could not combine action for specific performance and damages*: 107 S. C. 469; 112 S. C. 255; 91 S. C. 288.

April 18, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for specific performance, based upon the following contract:

> "Sales Contract of Real Estate
> "Ross F. Roach, Broker
> "Rock Hill, S. C., Aug. 23, 1920.
> "$19,425, or $105 per acre.

"Articles of agreement between Ross F. Roach for R. E. Sumner of Rock Hill, S. C., and J. W. Bankhead of Lowryville, S. C.:

"Ross F. Roach agrees to sell and J. W. Bankhead agrees to buy the following described property: One 185 acre (more or less, known as the John Roddey Lock view, about 2½ miles east of Rock Hill, four tenant houses, one barn, for the sum of nineteen thousand, four hundred and twenty-five dollars for sound and unincumbered titles for one thousand nine hundred forty-two dollars and fifty cents ($1,942.50) dollars of purchase price is acknowledged paid to bind the obligation until sound and unincumbered titles can be furnished by the owner, by or before January 2, 1921, when the remainder is to be paid as follows: Cash.

"Should any defect appear in the titles that cannot be corrected the amount paid is to be promptly refunded to the buyer by Ross F. Roach, Broker. The buyer is to have the privilege of examining the titles before completing payment. Taxes are to be paid by the owner up to January 2, 1921. It is understood by all parties interested that Ross F. Roach is to be responsible only for the amount in his hands, but is to use his best efforts to see that the contract is fulfilled by both buyer and seller. The amount paid to bind the obligation is to be forfeited, provided the buyer fails to comply. Said amount of forfeit is to be equally divided between the owner of the property and the broker.

"Witnesses:

"C. A. Reese, for_____R. F. Roach, Broker.
"E. S. Kirk, for_____J. W. Bankhead, Buyer.
"Arnold P. White, for_____R. E. Sumner, Broker."

The respondent, the purchaser, refused to comply. The seller at the time of the making of the contract did not own the land, but had himself only a contract to purchase.

The case was tried before Judge Ernest Moore, who found that the contract was speculative, and under the case of *Schmid v. Whitten,* 114 S. C. 245, 103 S. E. 553, refused to require specific performance.

Specific performance is addressed to the sound discretion of the Court of equity. Judge Moore found as a matter of fact from the evidence that the contract was speculative. In so finding he is abundantly sustained by the evidence. The seller did not own the land at the time he made the contract to sell, and before he took title, or the time had arrived at which he could get the title, he made a contract of resale. The appellant may have changed his mind, or his circumstances may have changed. If the appellant contracted to purchase for his own use, it would have been easy to have explained his change of purpose. He offered no explanation, but, on the contrary, he made a contract of sale in which he and his agent, whose business it was to negotiate sales of land, should divide share and share alike the $1,942.50, the forfeiture provided by the contract sued upon. The contract itself shows its speculative nature. It is true the case of *Schmid v Whitten, supra,* was decided by a divided Court, but it does not lose its binding authority for that reason. The first ground of exception cannot be sustained.

II. The only other question is: Did his Honor err in not giving damages for the breach of the contract?

There was no error here. The contract itself provided the measure of damages, the forfeiture of the initial payment, and that has been paid.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE GARY (see opinion) and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (see opinion) dissents.

MR. CHIEF JUSTICE GARY (concurring) : The decision in the case of *Schmid v. Whitten,* 114 S. C. 245, 103 S. E. 553, was rendered by a divided Court, three to two; the writer hereof wrote a dissenting opinion, in which Mr. Justice Hydrick concurred. That case is conclusive of the question now under consideration. As it is still of force, and is now a part of the law of the land, we conceive it to be our duty to recognize its authority and follow it, until it is overruled.

It seems to us that any other course would lead to endless confusion and uncertainty.

MR. JUSTICE COTHRAN (dissenting) : Action by vendor for specific performance of a contract for the sale of land.

The facts are as follows :

In the year 1920 one Good owned a tract of land, 185 acres, near Rock Hill, which he contracted to sell to the plaintiff, R. E. Sumner, for $14,506.75; $1,400 cash, which was paid, one-third of the remainder payable January 1, 1921, and the remaining two-thirds in three equal annual installments. This contract was entered into on the 27th of May, 1920.

On the 3d of August, 1920, the plaintiff, Sumner, contracted to sell the same place to the defendant, Bankhead, for $19,425; $1,942.50 cash, which was paid, and the remainder payable January 2, 1921.

On the 3d of September, 1920, Good executed a deed with renunciation of dower, conveying the land to the plaintiff, Sumner, which by agreement was deposited in escrow with the National Union Bank of Rock Hill, to be delivered to Sumner upon payment of the unpaid purchase price, $13,108, on January 2, 1921. The bank held a mortgage upon the land given by Good, and the apparent expectation of the parties was that upon the defendant Bankhead's compliance with his contract on January 2, 1921,

$13,108 would be paid by Sumner to the bank, to be applied to the Good mortgage, and the deed of Good to Sumner held in escrow, delivered to Sumner.

Bankhead not complying with his contract on January 2, 1921, Sumner had to make other arrangements to pay the bank the amount necessary to obtain the deed held in escrow.

On January 3, 1921, Sumner tendered Bankhead a deed of the property, with renunciation of dower, and demanded the amount agreed to be paid. Bankhead refused to pay, and this action followed. No question has arisen as to the ability of the plaintiff to comply with his part of the contract, and none as to the bona fides of the contract, adequacy of the consideration, or other element than as below stated.

The defendant interposed several defenses to the action, among which was the contention that the contract was a speculative one upon his part, and that the plaintiff, not owning the title to the land at the time of the contract, "was merely trading or speculating on a land contract." No other defense is considered by the Circuit Judge in his decree, and as the respondent has served no notice to sustain it upon other grounds, the discussion will be limited to the single question above suggested. He held in his decree that both parties entered into the contract solely as a speculative transaction, and following *Schmid v. Whitten,* 114 S. C. 245, 103 S. E. 553, that the Court of equity, in the exercise of the discretion vested in it, will refuse to decree the specific performance of such a contract, and dismissed the complaint.

The finding that the defendant entered into the contract as a speculation may be assumed to be true; but, assuming that Sumner entered into the contract with Good as a speculation, the contract with the defendant certainly was not; it was rather the consummation, the closing out, of a

previous speculative intent which should not be permitted to inject its poison into this valid contract.

But be that as it may, I cannot and do not subscribe to the doctrine declared in the *Schmid v. Whitten* case, and am of opinion that it should be promptly and decisively overruled. With the greatest respect for the learned Justices who constituted the majority of the Court in the promulgation of that opinion, I think that the havoc it has played in commercial transactions, the disintergation of the moral obligation to comply with solemn contracts, and the opening of a port of refuge to those who, with their eyes wide open, and, their greed for quick riches excited, are willing to repudiate their engagements under disappointing results, are sufficient justification for holding that it does not declare the law or the morals of this State.

It is but recent history to recall the wild orgy of speculation that followed the inflation of prices of all products and labor, and the quick response in the values of real estate. The buyer took his chances with the seller, each acting upon his individual judgment as to a matter that was a legitimate subject of contract; sales were made and quick results followed in profits earned; the spinning top, resting upon a very slight foundation, maintained its equilibrium as long as it was revolving, and all went merry; the revulsion came, something happened, we do not know what, the top ceased to spin, and the crash came; many were caught with high-priced land upon their hands and contracts, honestly, legally, though speculatively, entered into, which tested their integrity, a storm that strained the stoutest timbers of the staunchest ships. Common honesty and manliness dictated compliance with losing ventures, the retention of the trust that others had reposed, and of self-respect. I think that it was unfortunate, an unkindness, to those for whom a natural sym-

pathy was excited, who had been caught with the bag to hold," to extend an opportunity of repudiating their obligations at the expense of their self-respect.

It is remarkable to me that the squealer, the welcher, repudiator, should in such times be adopted as the ward of a Court of equity, whose proud boast is the delight to do equity, and through whose portals the man with unchaste hands may not pass.

The facts in the *Schmid v. Whitten* case were these: Schmid entered into a contract with Whitten to buy his land at an agreed price—very likely before the era of inflation and speculation dawned upon the country. Schmid then did what he had a perfect right to do, bargained the land to another, doubtless at a profit, and that buyer did the same thing with another. It is hard, but it is honest, to comply with a trade when two other trades of one's property at profits have been made and prices are booming. Whitten could not stand the test, and refused to comply when the time came, and Schmid sued for specific performance. The Court held, I think without consideration of the obligations of Schmid to his vendee, or of that vendee to his vendee, that Whitten should not be compelled to comply, for the reason that Schmid was speculating, as also were his vendee and that of the latter; but that Whitten could be made to respond in damages. The result is that a new lawsuit between Schmid and Whitten is in order, a new one between Schmid and his vendee, and a new one between that vendee and his vendee; a train of litigation, all growing out of Whitten's failure to do what he solemnly agreed to do. As is said by Judge O'Neall in *Gregorie v. Bulow,* Rich. Eq. Cas. 235:

"The proceeding by bill for a specific performance of a contract for the sale of the land, is to be encouraged instead of being discouraged. For in one case, it ends all litigation between the parties."

If the purpose to be accomplished by the *Schmid v. Whitten* case be to discourage men "free, white, and twenty-one" from entering into contracts of speculation, a purpose which is as impossible of accomplishment as to dam the Mississippi with sand, the means employed create a positive · inducement for such enterprises. It presents a "heads and tails" proposition. If the advancement in value anticipated by the speculator be realized, he pockets his profits with the exultation of a "Jack Horner;" if not, he pleads the speculative feature of the contract, and, under the protection of *Schmid v. Whitten,* retires with a whole financial skin but with a tattooed reputation.

It is inconceivable to me that a Court of equity will refuse specific performance of a contract upon the ground that the contract is unjust, inequitable, unconscionable, illegal, or contrary to public policy, and at the same time refer the plaintiff to another chamber in the temple of justice, with a memorandum to the Judge of the law Court directing him to award the plaintiff damages for a breach of the contract declared by the Court of equity so unchaste as to be nonenforceable in that forum.

It will be noticed that the decision in the *Schmid v. Whitten* case was based squarely upon the ground that the transaction was "a barefaced gambling and speculative" contract; that it was a manifestation of the "gambling speculative" craze extant; it is incomprehensible to me that the plaintiff relying upon a contract so characterized should be deluded with the hope of recovery in a Court of law.

I agree that the facts disclosed in that case a speculative intent upon the part of Schmid, but I do not agree that that fact presented a feature of equitable cognizance upon which a denial of the remedy of specifc performance could be justified, or that it amounted to gambling, which of course would have presented such a feature.

It is unquestionably true that the remedy of specific performance is not one of absolute right. The Court of equity reserves to itself the exercise of its discretion, and will not award it when injustice will result. This, however, is a legal discretion, not an arbitrary one, and is controlled by the settled principles of equity jurisprudence. I think it follows from this that unless the Court of equity can base its denial upon some fixed principle of equitable jurisprudence, such as fraud, misrepresentation, unconscionableness, imposition, illegality, and others the denial is arbitrary, and capricious, in violation of a plain legal right.

"This discretion is not an arbitrary or capricious one, but a sound judicial discretion, regulated by the established principles of equity." 36 Cyc. 549.

"The formula as to discretion, therefore, is habitually used by the Court simply to indicate that the case is governed not by legal rules but by some equitable principles." 30 Cyc. 550.

"Now though there is no actual fraud charged on complaint, yet in order to entitle him to a specific performance of the agreement, it ought to be fair, certain, just, equal in all its parts and for adequate consideration. If any of these ingredients are wanting, the Court will not decree a specific performance." *Clitherhall v. Ogilive,* 1 *Desaus.* 250.

"The bill seeks a specific performance of the contract for the sale of the land; but that is always in the discretion of the Court, the discretion of equity." *Doar v. Gibbes,* Bailey Eq. 371.

In *Barksdale v. Payne,* Riley Eq. 174, the Court says:

"Whenever there is a concealment, or misrepresentation of material facts, whether designedly or not, or a material breach of contract by the other party, * * *equity will not enforce the contract against him."

"Specific performance is not a matter of absolute right, but rests in the sound judicial discretion of the Court, guided by established principles." *Davenport v. Latimer,* 53 S. C. 563; 31 S. E. 630. *Bull v. Fallaw,* 109 S. C. 306; 96 S. E. 147. *McChesney v. Smith,* 105 S. C. 176; 89 S. E. 639. *Anthony v. Eve,* 109 S. C. 255; 95 S. E. 513.

The right to specific performance is not absolute, but rests in the discretion of the Court, which is not arbitrary or capricious, but to be exercised in accordance with the established principles of equity. *Woldenberg v. Riphan,* 166 Wis. 433; 166 N. W. 21.

Specific performance held within Court's sound judicial discretion as informed and directed by principles, rules, and practice of equity. *Hess v. Bowen,* 241 Fed. 659; 154 C. C. A. 417.

"It is always desirable to make the least draft which is possible upon this undefined power of discretion, and to determine causes upon established rules." *Sweeney v. O'Hora,* 43 Iowa 34.

"The matter of compelling specific performance is one of sound and reasonable discretion—of judicial, not arbitrary and capricious, discretion. There must be some reason founded in equity and good conscience for refusing the relief. Such reason has been generally found, by the Court refusing it, in some mistake or fraud, or unconscionableness in the contract, or in some laches on the part of the plaintiff changing the circumstances so as to make it inequitable to compel a conveyance, where the claim is stale, or there is reason to believe it was abandoned." *Thompson v. Winter,* 42 Minn. 121; 43 N. W. 796; 6 L. R. A. 236.

For the equitable grounds upon which the chancellor may base his refusal, see the following cases: *Marthinson v. McCutchen,* 84 S. C. 256; 66 S. E. 120. *Cabeen v.*

*Gordon,* 1 Hill Eq. 51. *Holley v. Anness,* 41 S. C. 354; 19 S. E. 646.

The contract between Schmid and Whitten was either valid, or it was invalid. It was not, and could not have been shown to have been, illegal, unconscionable, oppressive, unjust, or fraught with hardship to the seller; there was no suggestion of fraud, misrepresentation, or undue influence. The only alleged vice in it sufficient, as held, to justify the chancellor in withholding the remedy of specific performance, was that the transactions of Schmid in connection with the contract evidenced a purpose on his part to speculate in the anticipated rise in the market value of the land; and, before the Court of equity would be justified in denying to a speculating party the remedy allowed to every contracting party to a valid legal contract, it must of necessity have interpreted the speculating contract as a gaming transaction and illegal. This it has done, and has relegated the plaintiff to a Court of law for the recovery of damages for the breach of a contract which should necessarily be legal and enforceable. In other words, the Court of equity declines to give relief on the ground that the contract is illegal, and remits the plaintiff to a Court of law where he can recover only upon the theory that the contract was legal—a conclusion pretermitted by the decision.

Instances where the Court of equity exercises its discretion are based upon equitable principles, such as the plaintiff's fraud, or misrepresentations, or defendant's mistake, or where the contract is incomplete or uncertain, or where the enforcement would be detrimental to the public welfare, or where the contract lacks mutuality, or where the plaintiff has been guilty of laches, or where the situation of the parties has changed owing to the delay, or that the contract involves a breach of trust, unfairness, or hardship, or that the consideration is illegal—all ac-

knowleded subjects of equitable jurisdiction. I fail to find a single authority, outside of *Schmid v. Whitten.* containing even a suggestion that the speculative feature of a contract is a matter of equitable cognizance, unless it amounts to illegality, in which event the plaintiff would not be entitled to relief either at law or in equity.

To hold that a contract is illegal, simply because one or both of the parties intended to speculate upon the rise or fall of the market value, is to annul probably 90 per cent. of commercial transactions, and to stop the wheels of trade.

It is impossible to announce a doctrine applicable to land contracts and not with the same breath wither all other contracts of a similar nature.

Legitimate speculation is the life of trade. It is the moving spirit in the life of a merchant who buys goods to sell again, of the manufacturer who buys and manufactures and sells again, of the farmer who sows and reaps and sells.

I know of no law, and none has been cited, that a contract is to be annulled because of a speculative intent, except in instances where the gaming element is established; where no delivery is contemplated and the parties expect to settle simply upon differences at the delivery date.

"It is now regarded as well settled that a sale for future delivery is valid where an actual transaction is contemplated, and not a mere settlement by the payment of the difference between the market and the contract price at the time appointed for delivery; and this, even though the transaction is entered upon as a speculation by one who neither has present ownership of, nor expects actually to receive, the subject of the sale, intending a purchase, or a resale, before the time of delivery." 22 L. R. A. (N. S.) 174 (note).

In *Ling v. Malcom,* 77 Conn. 517, 59 Atl. 698, it is held that, although contracts for the purchase of stocks of a fluctuating value upon a margin are speculative in character they are not for that reason illegal, when there is a bona fide employment of the broker to make a commercial purchase of the stocks, to be held for delivery upon payment of the purchase price.

In *Wheeless v. Fisk,* 28 La. Ann. 731, it is held that the fact that a party buying gold, in order to profit by fluctuations in its value, furnished only a margin, did not make the contract immoral.

In *Peters v. Grim,* 149 Pa. 163, 24 Atl. 192, 34 Am. St. Rep. 599, it is held:

"A purchase of stock for speculation, even when done merely on margin, is not necessarily a gambling transaction."

That a purchase of stock on margin for speculation is not necessarily a gambling transaction is also held in *Hopkins v. O'Kane,* 169 Pa. 478, 32 Atl. 421; *Wagner v. Hildebrand,* 187 Pa. 136, 41 Atl. 34; *Taylor's Estate,* 192 Pa. 304, 43 Atl. 973, 73 Am. St. Rep. 812.

In *Kendall v. Fries,* 71 N. J. Law, 401, 58 Atl. 1090, it is held that evidence that stocks were bought on a margin, that the client was speculating, and that the stock was not at any time assigned or given to him, did not justify a conclusion that the parties were merely dealing in differences; but that the fact he bought on margin proved only that he bought for part in cash and part on credit.

In *Richter v. Poe,* 109 Md. 20, 71 Atl. 420, 22 L. R. A. (N. S.) 174, it is held, quoting from the syllabus:

"A speculative contract for the purchase and sale of stocks on margin is not invalid, as a gambling transaction."

"And where stocks or commodities are bought and sold upon speculation and on margin, it is not a gambling

transaction if it is understood by the parties that they are to be delivered and paid for." 20 Cyc. 927.

A contract for the sale of goods to be delivered at a future day is not invalidated by the circumstance that, at the time of making the contract, the purchaser intends to resell before the time appointed for the delivery. *Western Union Telegraph Co. v. Littlejohn,* 72 Miss. 1025, 18 South. 418.

There can be no difference in principle between a contract for the future purchase of goods and one for land. Mr. Benjamin says, in reference to the former:

"A contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods nor any other means of getting them than to go into the market and buy them; but such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer."

The statute of this State, aimed at the viciousness of future contracts, renders them illegal unless both parties at the time of the contract contemplate the actual delivery of the commodity; assuming as a matter of course that, if actual delivery be contemplated the contract is good, although both parties intended to speculate upon the price at the delivery date. Hundreds of farmers, even before the seed is in the ground, sell the future crop at a certain price, deliverable in the fall; they are speculating upon the price at the delivery date. Can it be contended that for that reason, taking the chance of its going up, they should not comply with their contract if it should go down? Or one who does not plant a seed has the unquestioned right to risk his judgment and buy cotton deliverable at a future date, speculating on the rise; shall he be allowed, because he was speculating, to take down

his profits if there should be a rise, and repudiate his contract if there should be a decline?

In the case at bar, Sumner and Bankhead made a contract for the sale and purchase of the land, to be consummated at a future day; Bankhead paying cash 10 per cent. of the purchase price, $1,942. There is not the slightest evidence that Sumner did not intend to make Bankhead a deed at the appointed time, or that Bankhead did not intend to pay the balance of the purchase money. What possible difference can it make that Sumner had bought the land expecting to sell at an advanced price, was speculating upon the rise in value, or that Bankhead bought from Sumner with like intent? Each was engaged in a perfectly legal transaction, the differentiating element of actual delivery being present; and, being legal, I see no reason why their undertaking should not be enforced.

There is not a single rule in equity which the seller in in the case at bar has violated, and not a single reason, based upon equitable principles, which the buyer has invoked to excuse his compliance with his contract.

They were both full-grown men, capable of contracting; no complaint is made that the price at the time of the sale was greater than the value of the property; no fraud, mistake, misrepresentation, undue influence, or other matter of which equity will take cognizance is suggested. The whole defense is that Sumner had been speculating in land, which he had a perfect right to do, and that Bankhead was embarking upon a similar enterprise, which he also had a legal right to do; which, of course, is incompatible with any suggestion of illegality; and, if not illegal, a chancellor would be utterly unable to base his refusal of a decree for specific performance upon a single feature of equitable cognizance, and under these circum-

stances a baseless refusal must be deemed arbitrary and capricious.

If, therefore, the fact that the contract was infected with the spirit of speculation does not present a feature of equitable jurisprudence, because such a spirit is entirely legitimate, the facts persent no other possible feature of such jurisprudence, and the denial of the remedy of specific performance is absolutely without a basis, and would, therefore, be necessarily arbitrary and capricious.

"I am of opinion that the contract of sale is made in proper form, is fair, certain, upon sufficient consideration, free from accident, mistake or fraud, and in every respect lawful and binding at this time; and that the plaintiff is entitled to have specific performance of the defendant's agreement for the purchase of the Mim's tract." Chancellor Wardlaw in *Moorer v. Kopmann,* 11 Rich. Eq. 225.

In *Lumber Co. v. Matheson,* 69 S. C. 87, 48 S. E. 111, it is held that in the absence of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed or of any inequitable conduct on the part of the paintiff, the latter is entitled, as a matter of right, to the remedy of specific performance.

A decree for the specific performance of a contract is a matter of right, when a proper case is presented, although said to rest entirely in the discretion of the Court. That discretion is not arbitrary but governed by fixed rules, *Howard v. Moore,* 36 Tenn. (4 Sneed) 317.

"When a contract of which equity has jurisdiction conforms with certain equitable principles, which are quite limited in number, it is as much a matter of course, for a Court of equity to decree specific performance, as for a Court of law to give damages for breach of the contract." —36 Cyc. 560.

"While an application for specific performance is addressed to the discretion of the Court, nevertheless, where

a valid contract, which is fair and unobjectionable, is shown, the Court is bound to give the relief sought." *Fowler v. Fowler,* 204 Ill. 82, 68 N. E. 414; *Baltimore R. Co. v. Brubaker,* 217 Ill. 462, 75 N. E. 523.

"While the decreeing of specific performance rests in the sound discretion of the Court, yet, where the contract was fairly made, the price reasonable, and no reason exists for denying specific performance, it cannot be refused." *Faraday Co. v. Owens* (Ky.) 80 S. W. 1171; *Ry. Co. v. Herd* (Ky.) 14 Ky. Law Rep. 670. (Abstract.)

"Where the contract is valid, with no improper or fraudulent actions on either side, the Court has no discretion as to enforcing specific performance." *Yazoo R. Co. v. So. Ry. Co.* 83 Miss. 746, 36 South. 74.

"A Court of equity has no right to exercise arbitrarily its discretion to withhold or decree specific execution for the sale or purchase of land," and "such discretion must be controlled by established doctrines and principles of equity." *Collins v. Thomas,* 87 W. Va. 597, 105 S. E. 897.

"Generally, where the contract is unobjectionable, it is as much a matter of course for a Court of equity to decree specific performance as for a Court of law to give damages for a breach of it." *Id.*

"Where the parties are competent to contract and have made an agreement reasonably certain in all its parts and one which is not objectionable for unfairness, or inequitable, specific performance will be granted as a matter of law and right; there being no room for the exercise of judicial discretion." *Carter v. Schrader,* 187 Iowa, 1245, 175 N. W. 329.

Where a contract for sale of land is reasonably certain and not objectionable for unfairness or inequity, there is no room for exercise of judicial discretion as to whether it should be specifically performed; such performance be-

ing a matter of right. *Heins v. Thompson,* 165 Wis. 563, 163 N. W. 173.

"The discretion of the Court to compel the specific performance of a contract for the exchange of real estate is a sound judicial discretion, controlled by established principles; and where the contract is not inequitable, and where there are no other substantial reasons why it should not be executed, the Court may not in its discretion refuse specific performance." *Posey v. Kimsey,* 146 Ky. 205, 142 S. W. 703.

Though a decree for specific performance rests in the sound discretion of the chancellor, it will be ordered as a matter of course if the evidence is sufficient and there are no equitable considerations against it. *Black v. Miller,* 158 Iowa, 293, 138 N. W. 535.

"Though specific performance cannot be demanded as a matter of absolute right, and it rests in sound judicial discretion, yet, where all the necessary incidents and conditions are proven by satisfactory evidence, the relief should be decreed as a matter of right, and not as a matter of favor." *Turn Verein Eiche v. Kionka,* 255 Ill. 392, 99 N. E. 684, 43 L. R. A. (N. S.) 44.

"Though the granting of specific performance rests in the discretion of the chancellor, it must not be exercised in an arbitrary or capricious manner, but is to be governed by sound legal rules and principles, and hence where a contract to sell land was free from unfairness, overreaching or over keenness on plaintiff's part, a decree denying him specific performance should be reversed." *Kirkpatrick v. Pease,* 202 Mo. 471, 101 S. W. 651.

I therefore conclude:

1. That the remedy of specific performance of a contract for the sale or purchase of real estate rests in the discretion of the chancellor.

2. That that discretion is a judicial discretion, to be exercised and applied to the particular case, not arbitrarily or capriciously, but as controlled by the fixed principles of equity jurisprudence.)

3. That unless the granting of the remedy offend one or more of these fixed principles, the plaintiff has a legal right to the remedy.

4. That the element of speculation in a contract does not offend any principle of equity jurisprudence, unless it can be characterized as a gaming transaction.

5. That there is no evidence in the case tending to show that the contract in question had any element of a gaming transaction in it.

6. That the decree appealed from should be reversed, and the case remanded to the Circuit Court, with directions to grant the relief prayed for by the plaintiff.