667 S.E.2d 540

**Ex parte Eric Steven BLAND and Ronald
L. Richter, Jr., Respondents,**

**In re James W. Myrick, Pinnacle Land & Timber
Co., Inc., High Bluff Developers, LLC, and
Shoreline Investments, Plaintiffs,**

**v.**

**Nexsen Pruet Jacobs Pollard & Robinson, LLP,
and Neil C. Robinson, Appellants.**

**No. 26547.**

Supreme Court of South Carolina.

Heard May 29, 2008.
Decided Sept. 22, 2008.
Rehearing Denied Oct. 28, 2008.

G. Trenholm Walker, of Pratt–Thomas Epting & Walker, of Charleston, for Appellants.

William C. Helms, III, John W. Fletcher, and Rodney K.E. Mintz, all of Barnwell Whaley Patterson & Helms, of Charleston, for Respondents.

Chief Justice TOAL:

This appeal arises out of a claim that two attorneys violated a court order related to discovery and breached a settlement agreement containing a non-disclosure and confidentiality clause. The trial court held that the attorneys had not materially breached the court's order or the settlement agreement, declined to award damages or equitable relief, and declined to hold the attorneys in contempt. This appeal followed.

We reverse the trial court's decision and hold that the attorneys clearly breached the protective order and settlement agreement, and that the trial court therefore erred in declining to hold the attorneys in contempt. We accordingly order the respondents to perform specific actions to cure the breach of the protective order and settlement agreement, and we remand this matter to the trial court to determine the amount of attorneys' fees to be awarded to Nexsen Pruet under the settlement agreement, as well as the appropriate sanction for our finding of contempt.

## FACTUAL/PROCEDURAL BACKGROUND

Appellants Neil C. Robinson and the law firm Nexsen Pruet Jacobs Pollard Robinson (collectively "Nexsen Pruet") brought a motion in the trial court requesting that the court find that the respondents, Eric S. Bland and Ronald L. Richter, Jr., violated a protective order and a settlement agreement entered in litigation between Nexsen Pruet and the plaintiffs captioned in this action. Bland and Richter represented the

plaintiffs in the merits phase of the litigation, and in order to provide a complete factual background for this appeal, it is necessary to recap the events leading up to the lawsuit and the settlement.

The litigation underlying this appeal began when the plaintiffs captioned in this action, James W. Myrick, Pinnacle Land Timber Company, High Bluff Developers, and Shoreline Development (collectively "Myrick") sued Nexsen Pruet alleging legal malpractice. Myrick's claim was based on a purported conflict of interest in Nexsen Pruet's alleged representation of both Myrick and a competitor in a prospective real estate transaction. In his discovery requests, Myrick sought several of Nexsen Pruet's internal documents such as billing records, financial statements, and policy manuals outlining Nexsen Pruet's procedure for checking for conflicts of interest. As part of its response to this discovery, Nexsen Pruet produced several documents which the parties collectively refer to as a "policy manual" for opening files and checking conflicts. The parties entered into a protective order which provided that all documents marked by the parties as "confidential" would be used "only for purposes of this litigation," and contained a stipulation that all internal materials related to Nexsen Pruet's policies and procedures would be treated as confidential material. Most importantly, the order expressly prohibited the use of confidential material in any other litigation "or for any other purpose," and required that all confidential material be returned upon written demand at the conclusion of the litigation.

The parties eventually settled the case and entered into a consent order of dismissal. The settlement agreement contained a "covenant of strict confidentiality" which provided:

> The parties to this settlement agreement and release agree that the terms and conditions of this settlement agreement and release, including but not limited to the amount of the payment, shall be held in strict confidence and shall not be disclosed to any person. . . . If asked about the settlement, the parties hereto agree that the only affirmative response shall be that the matter was resolved to the mutual satisfaction of the parties.

Additionally, the settlement agreement contained a provision entitled "enforcement of confidentiality." That clause provided:

The parties to this [settlement agreement] hereto acknowledge and agree:

(a)that the covenant of confidentiality is a material and essential term of the [settlement agreement] . . .

(b)that a violation of the covenant of confidentiality will necessarily cause damages and injury to the non-breaching party . . . and

(c)that neither monetary damages nor any other remedy at law may be adequate or sufficient to protect the non-breaching parties if there is a breach, and that, because such damages are difficult to calculate, $10,000 shall constitute a reasonable and fair estimate of the minimum damages to be suffered . . . as a result of such breach. If [ ] an action or motion is brought and a violation of the covenant of confidentiality is demonstrated and supported by affidavit or other proof, the breaching persons shall be liable, at a minimum, for the liquidated damages set forth herein ($10,000), any additional damages as may be proven, and for the attorney's fees and costs incurred of the non-breaching party bringing the proceeding.

Myrick, Bland, and Richter executed the settlement agreement, and it is instructive to note that the settlement agreement contained an attestation that all materials designated as confidential in the protective order had been either returned to Nexsen Pruet or destroyed.[1]

About two years after the parties executed the settlement agreement, Bland and Richter filed a complaint alleging legal malpractice against Nexsen Pruet on behalf of Frank Robertson, another former client of the firm. Bland and Richter

---

1. In publishing large portions of the settlement agreement, we do not overlook the fact that the parties purported to treat the terms of the agreement as confidential. In this vein, we issue a note of advisement: although the court's rules allow litigants to agree to settle and dismiss lawsuits with limited court involvement, see Rules 41(a)(1) and 41.1(a), SCRCP, when parties seek to use the court system to enforce the provisions of private settlement agreements, those agreements become publicly available court records absent a properly filed and approved request to seal.

again sought discovery of several of Nexsen Pruet's internal documents. During discovery, Bland and Richter apparently grew concerned that although they requested an "entire Nexsen Pruet manual" related to conflicts of interest, they initially received only a few redacted pages and not the full policy manual received in the *Myrick* case. At some point, Bland and Richter discovered that they were in fact still in possession of copies of the policy manual which had been produced in the *Myrick* litigation. Bland and Richer alleged that they had overlooked these copies in their attempts to purge their files of confidential material because the copies were attached as exhibits to depositions in the *Myrick* case.

Bland and Richter notified Nexsen Pruet's counsel in the *Robertson* litigation that they were in possession of "the entire [Nexsen Pruet] manual," and shortly thereafter, Bland and Richter introduced the policy manual as an exhibit during the deposition of Nexsen Pruet's corporate designee for discovery. Nexsen Pruet's then-counsel contacted the Charleston attorney who represented Nexsen Pruet in the *Myrick* litigation and allegedly informed him how discovery had proceeded with respect to the policy manual. Shortly after this contact, Nexsen Pruet filed a motion under the caption of the *Myrick* case to enforce the settlement agreement. Nexsen Pruet alleged that Bland and Richter had violated the terms of the protective order as well as the settlement agreement, and Nexsen Pruet requested damages, attorneys' fees, and a determination of whether Bland and Richter were in contempt.

While Bland and Richter argued that their continued possession of the policy manual was inadvertent, Nexsen Pruet argued that it was calculated and deliberate. In support of their contention, Nexsen Pruet offered printouts from Bland and Richter's firm website which touted the amount of a settlement of "a legal malpractice/breach of fiduciary claim against one of South Carolina's largest firms," as well as e-mails from Bland to Nexsen Pruet's counsel in the *Robertson* litigation containing inflammatory and inappropriate language. Nexsen Pruet additionally offered a picture of a display in Bland and Richter's office. This picture shows Richter holding a blow-up of a check that is drafted payable to "Bland Law Firm and Richter Law Firm, and their client James W. Myrick." The amount of the check is listed as

"$ $ $ $ $ $ $ $ Big Money $ $ $ $ $ $ $ $." Bland is positioned to one side of the check and is shaking the hand of a person on the opposite of the check. The face of Neil C. Robinson, the Nexsen Pruet attorney whose conduct was primarily at issue in the *Myrick* case, is super-imposed over the face of the person shaking Bland's hand in the display.

The trial court held that Bland and Richter had not materially breached the protective order or the settlement agreement, declined to award any damages or equitable relief, and declined to hold either Bland or Richter in contempt. The trial court specifically held that Bland and Richter's possession of the policy manual was an unintentional oversight, that there was no evidence of an inappropriate intent to harm, and that upon discovering that they were still in possession of the policy manual, Bland and Richter immediately contacted Nexsen Pruet's counsel in the *Robertson* case. Nexsen Pruet appealed.

This Court certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR. Nexsen Pruet presents the following issues for review:

I. Did the trial court err in holding that Bland and Richter did not violate the protective order and the settlement agreement by retaining the policy manual and by introducing the manual in subsequent litigation?

II. Did the trial court err in holding that neither Bland and Richter's website testimonial nor their office display violated the settlement agreement's covenant of confidentiality?

III. Did the trial court err in failing to hold Bland and Richter in contempt?

### LAW/ANALYSIS

### I. The Policy Manual

█ Nexsen Pruet argues that the trial court erred in concluding that Bland and Richter's conduct with respect to the policy manual was not a material breach of the settlement agreement and did not warrant any relief. We agree.

Our analysis on this issue must take a rather unusual direction, because as a starting point, Bland and Richter seem

to agree that they violated the protective order and the settlement agreement by failing to see that all confidential materials produced by Nexsen Pruet were returned to the firm or destroyed and by using the policy manual in subsequent litigation as a deposition exhibit. Bland and Richter instead argue (1) that Nexsen Pruet waived the right to enforce this provision of the protective order and settlement agreement; (2) that Nexsen Pruet suffered no harm due to Bland and Richter's continued possession of the policy manual; and (3) that because the policy manual was sought as discovery in the *Robertson* litigation, Bland and Richter should be held harmless for their technical breach. After taking these arguments in turn, we find that none of them are persuasive.

Bland and Richter hinge their waiver argument on the conduct of Nexsen Pruet's attorney in the *Robertson* litigation. Bland and Richter allege that they informed Nexsen Pruet's attorney that they were in possession of documents which were the subject of a protective order, that the attorney gave Bland and Richter assurances that Nexsen Pruet would not seek enforcement of the protective order and settlement agreement, and that Bland and Richter were "induced by [Nexsen Pruet's] inactivity" to use the policy manual in the *Robertson* deposition.

But the evidence in the record belies this characterization. Although the record supports Bland and Richter's assertion that they advised Nexsen Pruet's attorney that they were in possession of the policy manual, there is no evidence that Bland and Richter offered this advisement as any sort of cautious notice that they were in possession of documents covered under a protective order, nor is there evidence Bland and Richter were seeking any advice as to how to proceed and honor that protective order. The record instead reflects that Bland and Richter attempted to use the continued possession of the policy manual as leverage in discovery, and this is exhibited by the dialogue between the parties where Bland and Richter matter-of-factly assert that they "know that [additional] documents exist[,]" that they have "the entire [Nexsen Pruet] manual[,]" that they "obtained [the policy manual] from the *Myrick* case[,]" and that they intend to use the policy manual in the upcoming deposition of Nexsen Pruet's corporate designee for discovery. This bold course of conduct,

characterized by the advertisement that they intended to use the materials in discovery, does not evidence a cautious approach to discovery cognizant of the trial court's previous pronouncements regarding how to treat confidential materials. We therefore are not persuaded by Bland and Richter's attempts to characterize their conduct in this manner.

Bland and Richter's argument regarding waiver is further undercut by the response they received after first advising Nexsen Pruet's attorney of their continued possession of the policy manual. Specifically, Nexsen Pruet's attorney responded "[p]lease describe those documents and I will discuss with [Nexsen Pruet]. I understand that there is a protective order in place in *Myrick* and agree that this description/identification will not violate that order. No term or provision of the protective order is being waived or modified."[2] This is strong evidence cutting against Bland and Richter's waiver argument, and in light of the settlement agreement's requirement that all waivers be executed in writing, as well as the court-entered protective order, which no single party could waive, we find that there are simply too many hurdles for Bland and Richter's waiver argument to overcome.

The trial court did not address the issue of waiver but instead focused on the fact that Nexsen Pruet eventually produced the policy manual during discovery in the *Robertson* case without a protective order being issued. The trial court also noted that Nexsen Pruet had not demonstrated how it has been harmed by Bland and Richter's continued possession of the policy manual. In our view, these facts are not instructive.

The "mootness" argument based on the production of the policy manual in the *Robertson* litigation presumes too much. While it is true that there is not currently a protective order in place in the *Robertson* litigation, that litigation is ongoing and the record reflects that at one time, Bland and Richter agreed to enter into a protective order similar to the one

---

2. The record reflects that the confusion about what constituted a "full policy manual" may have arisen because Nexsen Pruet engaged different outside counsel for the *Myrick* and *Robertson* matters, had different in-house counsel assigned to the cases, and because Nexsen Pruet contended certain documents were outdated and were not used by attorneys.

entered into in *Myrick*.  Although it might have been possible to raise a ripeness question in this appeal given the possibility that the *Robertson* litigation might ultimately conclude without an order or agreement requiring the return or destruction of all Nexsen Pruet's internal documents, neither party addressed this issue and we express no opinion on it.  We instead focus on the fact that the circumstances in this case involve the retention of documents in direct violation of a court order and that for no apparent reason, the court system was not asked to make a preliminary call regarding the retention of the policy manual until after the manual had been used in subsequent litigation.

The notion that Nexsen Pruet has an interest in seeing that Bland and Richter do not forever retain copies of internal Nexsen Pruet documents is quite reasonable.  For this reason, the fact that the Court might order Bland and Richter to destroy some copies of the policy manual but allow the continued possession of other copies of the same document is not at all inconsistent.  This sheds light on an underlying problem of Bland and Richter's argument, which is that at bottom, their position seems to be that subsequent events can render it acceptable for a party to unilaterally decide to violate the terms of a court order.  It is undisputed that the protective order required the return of all confidential documents disclosed in discovery.  Accordingly, the trial court's characterization of Bland and Richter's action in notifying Nexsen Pruet's counsel "commendably and immediately" after discovering the policy manual, whether correct or incorrect, is irrelevant.  Bland and Richter did not return the policy manual after discovering it, and they in fact made the policy manual part of the record in a separate piece of litigation. For this reason, it is clear that Bland and Richter breached the terms of the protective order and the settlement agreement.

Although we find that they proceeded improperly, Bland and Richter do not bear all of the fault in this situation, because as Bland and Richter point out, this dispute originated with what they felt was Nexsen Pruet's incomplete and misleading production of documents during discovery.  But although Nexsen Pruet ultimately stipulated that it should have supplied "the complete policy manual" with its initial

discovery responses, there is no information in this record indicating that Nexsen Pruet intended to be misleading or give incomplete information in discovery when it produced a different set of documents in the *Robertson* litigation as it did in the *Myrick* litigation. Again, we recognize that the record evidences confusion about certain documents which might have been outdated and for non-attorney use, and it further appears that in handling the *Robertson* case, Nexsen Pruet engaged in-house and outside counsel who had no knowledge of the intricacies of the *Myrick* litigation. The confusion related to the discovery provided in the two sets of litigation seems more a case of the left and right hands' failure to communicate as opposed to an act of calculated deception. If there were evidence of such an act, our analysis might indeed be different.

We therefore hold that the trial court erred in finding that Bland and Richter's possession of the policy manual did not violate the protective order, breach the settlement agreement, and did not warrant the grant of any relief. We specifically hold that the retention of the policy manual and the introduction of that manual in the *Robertson* litigation violated both the protective order and the settlement agreement, and we order that all copies of the policy manual which were improperly held following the conclusion of the *Myrick* litigation be returned to Nexsen Pruet within ten days of the issuance of the remittitur in this case. This matter is remanded to the trial court for a determination of attorneys' fees to be awarded to Nexsen Pruet under the settlement agreement, and Bland and Richter are ordered to provide the trial court with affidavits attesting to the return of all improperly retained copies of the policy manual when that return is completed.[3]

---

**3.** Two points warrant discussion as matters of housekeeping. First, Nexsen Pruet does not contest that the settlement agreement's liquidated damages provision applies only to breaches of the agreement's covenant of confidentiality, and that Bland and Richter's possession and use of the policy manual in no way disclosed confidential terms or conditions of the settlement. The liquidated damages provision is therefore inapplicable to this violation of the agreement.

Second, as a gateway argument on this issue, the parties contest whether the claims for violation of the protective order and breach of the settlement agreement sound in law or equity. Because we find there is no evidence supporting the trial court's conclusion that Bland

## II.  The Website and Office Display

■ Nexsen Pruet argues that the trial court erred in determining that Bland and Richter's website testimonial and their office display were not violations of the settlement agreement's covenant of confidentiality.  Although we might agree on the merits, this issue is not properly preserved for review.

It is instructive to begin by analyzing how Nexsen Pruet presented the website testimonial and the photograph at trial.  In the court below, Nexsen Pruet argued that Bland and Richter violated the protective order and settlement agreement by retaining and using the policy manual, and that circumstantial evidence demonstrated that this violation was calculated and willful.  As circumstantial evidence of willful action, Nexsen Pruet offered e-mails containing inappropriate and inflammatory language, the picture in Bland and Richter's office, and the website testimonial.  According to Nexsen Pruet, this evidence demonstrated that Bland and Richter were out to punish Nexsen Pruet and were determined to ignore the letter and spirit of the protective order and settlement agreement.

We agree that these e-mails as well as the picture and testimonial demonstrate animus and vindictiveness towards Nexsen Pruet, but the inescapable fact is that Nexsen Pruet is adopting an argument on appeal which differs significantly from the theory of the case it presented at trial.  Nexsen Pruet's motion did not assert the website testimonial or the office display as a basis for finding a violation of the protective order or settlement agreement, and in this regard, Nexsen Pruet's counsel took care to inform the trial court that these were not asserted as violations of the settlement agreement, but were asserted in support of a finding of willfulness which

---

and Richter did not violate the protective order and settlement agreement, we need not address these arguments.  We note, however, that it is well settled that an action for breach of contract seeking money damages is an action at law, *Eldeco v. Charleston County School District*, 372 S.C. 470, 476, 642 S.E.2d 726, 729 (2007), and that in an action for specific performance, an award of "special damages" is typically available only when necessary to make specific performance complete.  *O'Shea v. Lesser*, 308 S.C. 10, 14, 416 S.E.2d 629, 631 (1992); *Butler v. Schilletter*, 230 S.C. 552, 96 S.E.2d 661 (1957).

was relevant to Nexsen Pruet's motion for contempt. That this distinction was evident at trial is exhibited by the fact that Bland and Richter's counsel noted that the only grounds offered as violations of the protective order and settlement agreement were the retention and use of the policy manual. Thus, although the trial court expressly ruled that the website and office display did not violate the settlement agreement, the issue was not presented below and is therefore not preserved for appeal. *See Hubbard v. Rowe,* 192 S.C. 12, 19, 5 S.E.2d 187, 189 (1939) (noting that in order to be preserved, an issue must have been both raised to the trial court and ruled upon by the trial court).

### III. Contempt

██ Nexsen Pruet argues that the trial court erred in failing to hold Bland and Richter in contempt. The thrust of Nexsen Pruet's argument is that the trial court erred in focusing on Bland and Richter's initial possession of the policy manual and in failing to take into account Bland and Richter's conduct after discovering the policy manual. While Nexsen Pruet disputes that Bland and Richter's initial possession of the policy manual was "innocent and inadvertent," Nexsen Pruet argues that leaving initial possession aside, Bland and Richter's retention of the policy manual and the use of the manual in other litigation demonstrates a willful intent to violate the settlement agreement and the protective order. We agree.

██ A determination of contempt rests within the sound discretion of the trial court, and this Court will reverse a decision regarding contempt only if the trial court abused its discretion. *Brandt v. Gooding,* 368 S.C. 618, 627, 630 S.E.2d 259, 263 (2006). An abuse of discretion occurs when the trial court's ruling is based upon factual conclusions that are without evidentiary support or when the trial court's decision is based upon an error of law. *Fontaine v. Peitz,* 291 S.C. 536, 539, 354 S.E.2d 565, 566 (1987).

In the instant case, the trial court's conclusion that Bland and Richter did not willfully violate the protective order is without evidentiary support. Leaving aside the question of whether Bland and Richter's initial possession of the policy

manual was intentional, Bland and Richter both testified at trial that upon discovering the wrongfully retained copies of the policy manual, they recalled immediately that there was a protective order in place which required the return or destruction of the documents. Bland and Richter have not disputed that they knew that confidential documents from the *Myrick* litigation were not to be used in any other litigation, and in this vein, the trial court's conclusion that there was no willful violation of the protective order is not supported by the evidence.

We therefore reverse the trial court's determination regarding contempt and remand this matter to the trial court to determine the appropriate sanction. The trial court possesses full discretion in determining the sanction it deems appropriate, but we note that the parties agreed in the settlement agreement that liquidated damages of $10,000 per violation of the settlement agreement's covenant of confidentiality would constitute a reasonable and fair estimate of the minimum damages suffered.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's decision and remand this matter for additional proceedings.

MOORE, J., and Acting Justice JOHN W. KITTREDGE, concur. BEATTY, J., concurring in part and dissenting in part in a separate opinion. PLEICONES, J., dissenting in a separate opinion.

Justice BEATTY:

I concur in the opinion on the merits; however I disagree with the inference that $10,000.00 is an appropriate measure of damages for a sanction for contempt of court in this case. Initially, I am reminded that an appropriate sanction for contempt of court is within the trial court's discretion. Secondly, I am reminded that the parties agree that the $10,000.00 liquidated damages provision only applied to the covenant of confidentiality and that there was no breach of confidentiality. Finally, an award of damages would reward Appellants for obvious disingenuous discovery compliance.

In my view, the conduct of both parties is less than desirable and the opinion minimizes Appellants' failure to comply with discovery requests. This case would not be before this court had Appellants not gotten caught providing incomplete documents in discovery. Whether Appellants' conduct was intentional or not is irrelevant. The documents were prepared by them and in their possession.

Justice PLEICONES:

I join Justice Beatty's opinion expressing concern about the majority's suggestion that $10,000 might be the appropriate damages award here, and write separately to express my disagreement with the merits of the majority opinion.

In prior litigation, the circuit court had issued a protective order. When that litigation was settled, the Settlement Agreement contained a provision in which the respondents agreed they had returned or destroyed all the material covered by that order. After learning that respondents had apparently not destroyed or returned all the materials, appellants brought this motion seeking a finding that respondents were in contempt of the court's protective order and in breach of the Agreement[4]. Appellants moved for an order denying respondents use of those materials in the other litigation, an award of damages, and of attorneys fees. The circuit court, after an evidentiary hearing, held that respondents' retention of a single copy of the manual was "unintentional" and "innocent" and declined to award relief, holding any technical breach of the protective order and settlement agreement was not material.

Appellants first argue the circuit court erred in declining to specifically enforce the settlement agreement.[5] Whether to

---

4. Appellants did not seek any relief based on respondents' alleged breach of the Agreement's confidentiality clause based upon respondents' emails and advertising, but merely introduced this information as evidentiary support for their contempt claim, asserting that these actions demonstrated respondents acted willfully. At the hearing, appellants based their assertion of breach and contempt solely on the fact respondents retained a copy of the manual, not upon any other conduct. As the majority properly points out in Part I of the opinion, appellants are improperly attempting to raise an issue for the first time before this Court.

5. This is how appellants repeatedly characterize their theory.

grant specific performance is a matter committed to "sound judicial discretion." *Sumner v. Bankhead,* 119 S.C. 78, 111 S.E. 891 (1922). Here, the trial judge who heard the evidence determined that respondents' retention of the manual was unintentional and inadvertent and therefore declined to grant appellants relief. In my view, there is no abuse of discretion in denying specific performance where the sole issue before the trial court was whether specific performance was warranted by respondents' retention of the document, not their conduct after discovering they still had a copy of the manual. Furthermore, I can find no abuse of discretion in the trial court's decision to deny appellants' request to hold respondents in contempt for retaining the manual. *Rhoad v. State,* 372 S.C. 100, 641 S.E.2d 35 (Ct.App.2007) (contempt finding reviewed under abuse of discretion standard). I disagree with the majority that in deciding the contempt issue we can "leave aside the question of whether [respondents] initial possession of the policy manual was intentional" when the sole basis for the appellants' assertion that respondents were in contempt was their retention. Moreover, I do not agree we can rely upon respondents' use of the manual in the subsequent litigation to reverse the circuit court's order and hold respondents in contempt when the only question before that court was whether the retention itself was contumacious.

For the reasons given above, I would affirm the circuit court judge's order because I can find no abuse of discretion in his finding that respondents' retention was "unintentional" and "innocent" and his consequent denial of appellants' requests for "specific performance" and a finding of contempt. Respondents' conduct in emails, in advertising, and in the subsequent litigation is not relevant to the issues before that court nor are they relevant to the issues properly before this Court.